MAPLE HILL APARTMENT COMPANY v STINE

Docket No. 68746. Submitted August 10, 1983, at Detroit.—Decided
January 3, 1984. Leave to appeal applied for.

Plaintiff, Maple Hill Apartment Company, brought an action
against defendant, Robert W. Stine, an architect, for profes-
sional malpractice. Defendant retained Samuel Gun, who filed
an answer and counterclaim. Thereafter, defendant's insurer
retained Dennis Cotter to defend against plaintiff's action.
Cotter refused to represent defendant regarding the counter-
claim, believing that a conflict of interest could arise. The case
was submitted to mediation, and the panel returned a single
evaluation of $25,000 in plaintiff's favor. Defendant accepted
the evaluation but plaintiff did not. The claim and the counter-
claim were tried, and the jury returned a verdict of $4,700 in
favor of plaintiff and a verdict of no cause of action on defen-
dant's counterclaim. The Oakland Circuit Court, John N.
O'Brien, J., granted judgment on the verdicts, and, because
plaintiff did not obtain a verdict more than ten percent greater
than the mediation evaluation which was rejected, ordered
plaintiff to pay defendant's actual costs including a reasonable
attorney fee. The court ordered plaintiff to pay Dennis Cotter
$10,108.11 in attorney fees and costs, including $1,250 for
expert witness fees to be paid to defendant himself for testify-
ing in his own behalf. The court also ordered plaintiff to pay
Samuel Gun $4,218.75 in attorney fees and costs in pursuing

REFERENCES FOR POINTS IN HEADNOTES

[1, 6] 5 Am Jur 2d, Arbitration and Award § 139.
   20 Am Jur 2d, Costs § 72.
   Liability of parties to arbitration for costs, fees, and expenses. 57
   ALR3d 633.
[2-5, 7] 15A Am Jur 2d, Compromise and Settlement § 5.
   20 Am Jur 2d, Costs § 12.
   20 Am Jur 2d, Courts § 82.
   Construction of provision in compromise and settlement agreement
   for payment of costs as part of settlement. 71 ALR3d 909.
[4] 20 Am Jur 2d, Costs § 16.
   Who is the "successful party" or "prevailing party" for purposes of
   awarding costs where both parties prevail on affirmative claims.
   66 ALR3d 1115.

defendant's counterclaim. Plaintiff appealed the ordering of these fees and costs. *Held:*

1. The Michigan Constitution grants authority to the Supreme Court to promulgate rules regulating practice and procedure in the courts. The provision in the General Court Rules for an award of costs including attorney fees after rejection of a mediation panel's evaluation, a trial and the occurrence of certain events may reasonably be classified as procedural and within the Supreme Court's authority to promulgate and regulate procedure in the courts.

2. The rule should be construed to tax only those costs which a person would find reasonably foreseeable under the circumstances existing at the time he rejects the mediation award. Costs accruing because of unforeseeable delay should not be taxed under the rule. The trial court must make a finding as to what costs were foreseeable.

3. The court erred in awarding attorney fees and costs to Mr. Gun. Defendant did not prevail on the counterclaim. Prevailing on the claim in question is an absolute prerequisite to the award of costs under the rule.

4. Defendant is not entitled to an expert witness fee absent a showing that he underwent special prepartion to testify as an expert.

Reversed and remanded.

J. T. KALLMAN, J., dissented in part. He agreed that the rule in question providing for costs including a reasonable attorney fee was not invalid as an impermissible interference with legislative prerogatives and explained his reasons. However, he believed that the Supreme Court, in promulgating the rule which taxes costs including reasonable attorney fees against a party who rejects a mediation evaluation and fails to satisfy certain conditions following trial, intended for that party to bear responsibility for all costs incurred after the rejection of the mediation valuation. He would also hold that it is not per se improper under the court rule to award attorney fees to more than one attorney and that the trial court correctly awarded costs and fees to both attorneys. He did not deem it dispositive that defendant's counterclaim proved unsuccessful. He believed that the important thing was that plaintiff's rejection of the mediation evaluation necessitated the trial and caused fees to be incurred in pursuing the counterclaim. He would affirm.

OPINION OF THE COURT

1. COSTS — CONSTITUTIONAL LAW — MEDIATION — COURT RULES.

The Michigan Constitution grants authority to the Supreme Court to promulgate rules regulating practice and procedure in the courts; the provision in the General Court Rules for an award of costs including attorney fees after rejection of a mediation panel's evaluation, a trial, and the occurrence of certain events may reasonably be classified as procedural and within the Supreme Court's authority to promulgate and regulate procedure in the courts (Const 1963, art 6, § 5; GCR 1963, 316.7, 316.8).

2. COSTS — MEDIATION — COURT RULES.

The policy underlying the provision in the General Court Rules for an award of court costs including attorney fees after rejection of a proposed mediation award and the occurrence of certain events is to place the burden of litigation costs upon the party who insists upon a trial by rejecting the mediation award; such a rule effectively encourages the settlement of pending litigation (GCR 1963, 316.7, 316.8).

3. COSTS — MEDIATION — COURT RULES.

The General Court Rule which taxes costs including attorney fees under certain conditions where a litigant rejects a proposed mediation award and insists upon a trial should be construed to tax only those costs which a person would find reasonably foreseeable under the circumstances existing at the time he rejects the mediation award (GCR 1963, 316.7, 316.8).

4. COSTS — MEDIATION — COURT RULES.

Prevailing on a counterclaim in question is an absolute prerequisite to any award of costs pursuant to a court rule providing for an award of costs relating to the counterclaim under certain conditions where the plaintiff has rejected a proposed mediation award in gross resolving both the plaintiff's claim and defendant's counterclaim (GCR 1963, 316.7[b][1]).

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY J. T. KALLMAN, J.

5. COSTS — MEDIATION — COURT RULES.

*The Supreme Court, in promulgating the rule which taxes costs including reasonable attorney fees against a party who rejects a mediation evaluation and fails to satisfy certain conditions following trial, intended for that party to bear responsibility for all costs incurred after the rejection of the mediation valuation (GCR 1963, 316.7, 316.8).*

6. Judgments — Attorney Fees — Multiple Attorneys.

> It is not improper, under a court rule providing for an award of
> attorney fees, to award attorney fees to more than one attorney
> in circumstances where the employment of more than one
> attorney is reasonable.

7. Costs — Mediation — Attorney Fees — Court Rules.

> A defendant who accepts a mediation evaluation in gross in favor
> of plaintiff on both plaintiff's claim and defendant's counter-
> claim is entitled to costs including reasonable attorney fees in
> pursuing his counterclaim where the plaintiff rejects the evalu-
> ation and fails to obtain a verdict more than ten percent
> greater than the mediation evaluation even where the jury
> returned a verdict of no cause of action on the counterclaim
> (GCR 1963, 316.7, 316.8).

*Donnelly W. Hadden, P.C.* (by *Donnelly W. Hadden*), for plaintiff.

*Samuel H. Gun,* for defendant.

Before: Bronson, P.J., and T. M. Burns and J. T. Kallman,* JJ.

Bronson, P.J. Plaintiff brought this action against defendant, its architect, alleging professional malpractice. Defendant filed a counterclaim against plaintiff, alleging that he had not been paid in full for services rendered. The matter was submitted to mediation pursuant to GCR 1963, 316. The mediation panel was not asked to evaluate separately the worth of the complaint and counterclaim, and it did not render separate assessments. Instead, it returned a single evaluation in favor of plaintiffs in the amount of $25,000. Defendant accepted this evaluation, but plaintiff rejected it.

After trial, the jury returned a verdict of only $4,700 in favor of plaintiff. The verdict was "no

---

* Circuit judge, sitting on the Court of Appeals by assignment.

cause of action" on the counterclaim. Because plaintiff failed to obtain judgment in an amount exceeding $27,500, the trial court ruled that, pursuant to GCR 1963, 316.7(b)(1), defendant was entitled to "actual costs". The term "actual costs" is defined in GCR 1963, 316.8 to include "a reasonable attorney fee as determined by the trial judge for services necessitated by the rejection of the panel's evaluation". Applying this rule, the court ordered plaintiff to pay Dennis Cotter, the attorney defending against the complaint, $10,108.11 in attorney fees and costs. This amount included $1,250 for "expert witness fees" to be paid to defendant himself for testifying on his own behalf. The trial court went on to order plaintiff to pay the attorney prosecuting the counterclaim, Samual Gun, $4,218.75 in attorney fees and costs. Plaintiff now appeals as of right from the court's order imposing these costs. We reverse and remand.

We acknowledge the Supreme Court's authority to promulgate rules regulating practice and procedure (as opposed to substantive rules) in the courts, Const 1963, art 6, § 5; *Perin v Peuler (On Rehearing),* 373 Mich 531, 541-542; 130 NW2d 4 (1964). We also agree with defendant that the provision for the award of costs, GCR 1963, 316.8, *supra,* may reasonably be classified as "procedural" in nature, despite this Court's observation that the line demarcating substantive and procedural rules is not susceptible of easy resolution, *Cleveland-Cliffs Iron Co v First State Ins Co,* 105 Mich App 487, 492; 307 NW2d 78 (1981). Accordingly, we decline to hold that the rule is unenforceable as an invalid promulgation of substantive law.

Nonetheless, we believe that the trial court erred in the way in which it applied the rule in

this case. The court found that the entire amount awarded as fees and costs had been "necessitated by [plaintiff's] rejection of the [mediation] panel's evaluation", GCR 1963, 316.8. The assumption underlying this finding is that all of the time spent by each of the attorneys in trying the case (in addition to time spent preparing for trial) must be treated as having been "necessitated" by plaintiff's decision as to the mediation. In this way, the trial court has used the term "necessitated" as if it meant "caused". Under the trial court's reasoning, since plaintiff's refusal to accept the mediation award was the "but-for" cause of the need for trial, plaintiff's action thereby "necessitated" all costs incurred by defendant's attorneys in trying the case. Given the language and purpose of GCR 1963, 316.7, we would interpret the term "necessitated" differently.

Neither case law nor the Committee Notes to GCR 1963, 316.7 and 316.8 provide this Court with any guidance in interpreting the meaning of terms contained in those rules. Still, the policy underlying the rule can guide this Court in its construction. That policy is apparent: to place the burden of litigation costs upon the party who insists upon a trial by rejecting a proposed mediation award.

We agree with any policy which effectively encourages the settlement of pending litigation. However, any such policy must be circumscribed by equitable considerations. A party should not be responsible for costs which accrue through no fault of his own. For example, if a party rejects a proposed mediation award and his opponent goes on to try the case in a manner which is grossly inefficient, or otherwise unduly wasteful of legal resources, it would not be fair to hold the party rejecting the mediation award responsible to the

extent that the expenses in question exceed an amount which is reasonable. GCR 1963, 316.8 recognizes this equitable consideration by authorizing only an award of "a reasonable attorney fee".

We believe that the term "reasonable" as used in this subrule should be construed to exclude certain costs which are incurred by the opposing side's attorney through no fault of the party rejecting the proposed mediation award. Plaintiff aptly points out that the mediation award and procedure tends to chill access to the courts by imposing the burden of uncertainty upon a party who is dissatisfied with a proposed award and who chooses to exercise his constitutional right to a trial. To some extent, this chilling effect is a necessary by-product of any policy which encourages settlement of pending litigation. However, the adverse effect of this policy upon a party's right to trial becomes oppressive when that party is faced with the potential of unlimited liability for any costs which are "but-for" caused by the decision to proceed to trial.

Taken to its logical extreme, defendant's argument would hold plaintiff liable for all costs incurred in the trial of a case, even if those costs were the direct result of thousands of hours of unjustifiable delays ordered by a trial judge over both parties' objections. A trial which could foreseeably have been completed in several days, for example, could run several months through no fault of either party. Applying defendant's reasoning to this hypothetical, plaintiff could be liable for many times the reasonably foreseeable cost of trial. We believe that any construction of the court rule which could lead to such absurd hypothetical results must be rejected.

In order to avoid the potential for imposing such

liability upon litigants, we construe the term "reasonable" to mean "reasonably foreseeable". In other words, a party who rejects a proposed mediation award should be responsible only for trial costs which a person would find reasonably foreseeable under the circumstances facing him at the time he decides to reject the award. This construction preserves the mediation procedure's effect of encouraging settlement, without adding the chilling element of uncertainty to a potential litigant's decision to exercise his right to trial.

In the present case, the trial court simply imposed the full amount claimed by defendant's attorneys as costs incurred in the trial of the case. The court did not distinguish between amounts of time spent in preparing for trial and time spent at the courthouse during the actual trial. All of the former is reasonably foreseeable; any litigant can expect that his opponent will need a certain amount of time to prepare for trial. However, plaintiff alleges that in the present case the parties were forced to spend an unusually large amount of time enduring delays in trial including numerous delays at the courthouse which neither party could reasonably have anticipated. We do not believe that the burden of these alleged delays should fall solely upon plaintiff.

Under the circumstances of this case, the trial court should have determined the amount of time which the trial of this matter would normally take, and should have computed attorney fees accordingly. If, as defendant asserts, the number of delays in the trial of this case was relatively normal, then the court's award of costs could be upheld, subject to the additional adjustments ordered *infra*. If, on the other hand, plaintiff is correct in alleging that this trial involved an

unforeseeable amount of delay, the court would be required to reduce its award of costs accordingly.

The matter is remanded for a factual determination of whether the trial of this cause involved more time than the parties could reasonably have anticipated when plaintiff decided to reject the mediation settlement. The court must then adjust its award of costs to the extent that there was any unforeseeable delay during trial. The court shall issue a written statement of its findings as to this issue.

There are additional adjustments which the trial court must make upon remand. First, the court must rescind its order requiring plaintiff to pay attorney Samuel Gun $4,218.75 in costs in connection with the pursuit of the counterclaim. We note that defendant did not prevail on the counterclaim —the verdict was "no cause of action". Prevailing on the claim in question is an absolute prerequisite to any award of costs under GCR 1963, 316.7(b)(1).

Defendant makes much of the fact that the proposed mediation settlement did not separately evaluate the merits of the counterclaim. According to defendant, since plaintiff rejected the settlement "in gross", it necessarily rejected the evaluation as to the counterclaim as well as the evaluation with respect to the original complaint. We disagree. There can be no question that any rational plaintiff would have accepted an evaluation indicating "no cause of action" on the counterclaim. The mere fact that plaintiff did not take the precaution of asking for separate evaluations does not require us to asume (1) that the evaluation was in fact the result of a setoff, or (2) that plaintiff intended to reject that aspect of the evaluation which related to the counterclaim. Certainly nothing in the rec-

ord supports either assumption. Under the circumstances, equity requires us to presume that plaintiff would have accepted any "no cause of action" on the counterclaim. Given this, we conclude that GCR 1963, 316.7(b)(1) applies, and that defendant's failure to prevail on the counterclaim bars its recovery of costs.

Finally, plaintiff notes that the court awarded $1,250 as an "expert witness fee" for defendant's own testimony. Nothing in the record indicates that defendant had to prepare himself as an "expert" or that his testimony appreciably lengthened his in-court testimony. Defendant acknowledges that the bulk of his trial testimony involved merely setting forth the factual background of the case. Defendant would have been called upon at trial to give this factual testimony regardless of whether he also gave testimony as an "expert". Absent some showing that defendant underwent special preparation to testify as an expert, we believe that the trial court erred by including any amount as an "expert witness" fee for defendant.

Reversed and remanded for proceedings consistent with this opinion.

T. M. Burns, J., concurred.

J. T. Kallman, J. (concurring in part and dissenting in part). I concur with the majority's rejection of plaintiff's argument that GCR 1963, 316 is, in essence, invalid as an impermissible interference with legislative prerogatives. However, I believe that this issue is entitled to a fuller explication than that given by the majority. I also concur with the majority's decision to strike the award of $1,250 as an "expert witness fee" to defendant himself. However, I find myself unable to concur in the remainder of the majority's opinion—both

in respect to the result reached and the rationale employed.

I

Plaintiff asserts that the trial court had no power under GCR 1963, 316.8, to award actual attorney fees as costs, advancing a number of policy reasons in opposition to such an award[1] and arguing that the mediation rule modifies substantive law without legislative approval. In effect, plaintiff wants this Court to declare that a court rule adopted by the Supreme Court constitutes an impermissible interference with the prerogatives of the Legislature.

As the majority notes, the Michigan Supreme Court has the power to establish rules regulating practice and procedure in the courts. In this case, however, I believe that more attention should be devoted to whether the mediation rule is "substantive" or "procedural" than the majority spends on this hard question. In *Cleveland-Cliffs Iron Co v First State Ins Co,* 105 Mich App 487, 492; 307 NW2d 78 (1981), this Court noted that the distinction between substance and procedure is a problem which has "challenged and baffled generations of lawyers". Legal commentary on this Court's opinion in *James v Dixon,* 95 Mich App 527; 291 NW2d

---

[1] Plaintiff argues that, because the outcome of litigation is uncertain, one should not be penalized for prosecuting or defending a lawsuit, that awarding attorney fees tends to chill access to the courts, that the difficulty in assessing reasonable costs would constitute an unreasonable burden on the sound administration of the courts, and, given the specific legislative authorization of attorney fee awards in certain other contexts, such awards should not be permitted as a consequence of rejecting a mediation panel's award. In fact, existing statutes clearly would not preclude the Supreme Court's promulgation of the mediation rule and the Supreme Court may well have believed that it had the right to adopt the rule pursuant to existing statute. See fn 4 *infra.*

106 (1980), in which it was held that the Michigan Supreme Court's adoption of MRE 601 impliedly abrogated the dead man's statute, MCL 600.2166; MSA 27A.2166, illustrates the difficulties in separating rules of substance and procedure. In Glicksman, *1980 Annual Survey of Michigan Law: Evidence,* 27 Wayne L Rev 757, 767, the *James* decision is favorably noted and praised for its "meticulous detail" in outlining the reasons for its conclusions. On the other hand, in Note, *Rules of Evidence: An Exercise of Constitutional Power by the Michigan Supreme Court,* 1980 Det Col L Rev 1063, 1093, the *James* decision is criticized as "unfortunate" and the product of "incomplete analysis by the court". The author concludes that the application of various tests propounded by different scholars to distinguish substantive and procedural rules clearly demonstrate that the dead man's statute is substantive, contrary to the holding of *James.*[2]

It is at least arguable that GCR 1963, 316, does impose a substantive rule under the guise of procedure. The mediation rule forces litigants to give up their rights to a full recovery in certain circum-

---

[2] The author of *Rules of Evidence, supra,* pp 1080-1083, sets forth six tests advanced by various scholars to distinguish rules of procedure and substance. The author concludes that under five of these six tests, the rule embodied in the dead man's statute must be deemed substantive. *Id.,* pp 1093-1095. In fact, by emphasizing different aspects of the dead man's rule, a conclusion contrary to that reached by the author can seemingly be fairly drawn through application of at least five of the six tests noted in *Rules of Evidence.* This again just serves to emphasize the slippery nature of the substance-procedure dichotomy.

I note that *James, supra,* has never been rejected by a panel of this Court and that two other panels have agreed with its holding that MRE 601 impliedly abrogates the dead man's statute. See *Mason v Chesapeake & O R Co,* 110 Mich App 76, 89; 312 NW2d 167 (1981) (Cynar, J., concurring in part and dissenting in part; however, the majority concurred in Judge Cynar's analysis of this issue); *Dahn v Sheets,* 104 Mich App 584, 588-589; 305 NW2d 547 (1981), *lv den* 412 Mich 928 (1982).

stances and, as such, adversely affects vested interests.[3] Moreover, the obvious purpose of the rule is to reduce the number of cases going to trial. This effort to limit access to the courts may well be viewed as going beyond mere practice and procedure in the courts as affecting substantive rights to full access to the courts.

At the same time, the mediation rule may be properly characterized as procedural. The rule would not cause a person to alter his out-of-court conduct—a test which has sometimes been advanced as the cutting edge between substance and procedure. Moreover, the mediation rule actually goes to the means or methods of vindicating substantive rights, rather than defining the duties by which the populace must abide. Ultimately, I am loathe to say that a rule promulgated by the Michigan Supreme Court is invalid as constituting judicial overreaching. Since GCR 1963, 316, is not manifestly a substantive rule, I am unwilling to adopt plaintiff's argument that the rule is unenforceable.[4]

---

[3] GCR 1963, 316.7 requires a plaintiff who rejects mediation to obtain a judgment which is more than 10% greater than the mediation evaluation. In certain circumstances, this will unfairly deprive plaintiff of a full recovery. If, for instance, a mediation panel evaluates a particular medical malpractice action at $1,000,000, which evaluation is rejected by plaintiff and, following a jury trial, the judgment plus taxable costs and interest equals $1,100,000, plaintiff will be liable to the defendant for attorney fees. One might well question the wisdom of depriving a litigant of a full recovery by holding him responsible for the losing party's attorney fees where, as in the example set forth in this footnote, he obtains an award which exceeds the mediation evaluation by $100,000.

[4] I have analyzed this issue as the parties have drawn it, namely, that the crux of the problem is the resolution of the substance-procedure issue. In fact, the Supreme Court may not have been thinking of Const 1963, art 4, § 5—the constitutional provision placing practice and procedure in the courts in its bailiwick—in promulgating GCR 1963, 316.

The Supreme Court might have believed that it had specific statutory authorization for the rule. By statute, attorney fees may be taxed as costs if authorized "by statute *or by court rule*". (Emphasis sup-

## II

Plaintiff next asserts that the attorney fees awarded by the trial court were excessive in that at least part of these fees were not for "services necessitated by the rejection of the mediation evaluation". GCR 1963, 316.8. In plaintiff's counsel's words, a large portion of the attorney fees were "incurred by reason of the trial court's own inefficiency and want of diligence". Apparently, the bench trial in this case extended over portions of nine days, although only some 25 hours were actually spent on the trial of this cause.

I strongly disagree with the majority's conclusion that delays during the course of trial should not be deemed "reasonably foreseeable" and chargeable to the side which rejects the mediation and then fails to prevail within the meaning of GCR 1963, 316.7.

I would take judicial notice that heavy dockets

plied.) MCL 600.2405(6); MSA 27A.2405(6). This provision could be expansively construed as even permitting the Court to promulgate a rule which imposes on the losing litigant the ultimate responsibility for the winning party's attorney fees.

Conceivably, the Supreme Court was relying on Const 1963, art 3, § 7, which provides, *inter alia*, for the continuation of the common law unless changed, amended, or repealed. In *Placek v Sterling Heights,* 405 Mich 638, 656-660; 275 NW2d 511 (1979), the Supreme Court relied on this provision as support for its power to alter the judge-made common-law rule of contributory negligence as a bar to a plaintiff's recovery in a negligence suit without legislative action.

As plaintiff notes, the common-law "American rule" requires each party to a lawsuit to assume responsibility for his own fees, regardless of the outcome in the courts. Thus, the Supreme Court could have concluded that its authority to amend this rule was grounded in Const 1963, art 3, § 7.

The Staff Comment published in 408 Mich lxxv (1980) contemporaneously with the publication of the mediation rule fails to indicate what the Supreme Court relied upon in concluding that it had power to adopt the rule. The Staff Comment simply states that GCR 1963, 316, is based on several local mediation rules. This leads to a final possibility that the Supreme Court never really considered whether promulgation of the rule invaded legislative prerogatives.

in populous urban areas, such as Oakland County, have made it impossible for trial judges to devote 100% of their time to a particular cause over a period of days—emergencies arise, orders need to be executed, and the like. Whether or not the trial here could have proceeded more expeditiously does not change the fundamental fact that, but for plaintiff's rejection of the mediation, no trial would have been necessary in this case. As such, plaintiff's rejection of the mediation evaluation did, in fact, necessitate the expenditure of whatever attorney fees were required to bring this case to conclusion through trial.[5]

It is clear to me that, in promulgating GCR 1963, 316.7, the Supreme Court intended for the party who rejects the mediation evaluation and fails to satisfy the conditions of GCR 1963, 316.7, following trial, to bear responsibility for all costs, including reasonable attorney fees, incurred after the rejection of the mediation evaluation. I would not allow such a rejecting party to minimize the serious consequences of rejection by crying that the trial court was inefficient in proceeding with the case. The majority asserts that it does not believe that the burden for delays not "reasonably foreseeable" "should fall solely upon plaintiff". In fact, however, its disposition of this issue places none of the burden for any "unforeseeable" delays on the plaintiff. Instead, if the delay was "unforeseeable", plaintiff is not obligated to bear defendant's attorney fees for the period of this delay. This, of course, means that defendant will be responsible for attorney fees incurred *as a direct*

[5] This is not to say that I accept plaintiff's characterization that it had to pay defendants' counsel to do nothing but wait. It is highly probable that, during the breaks in the trial, defense counsel discussed strategy, did last minute research on issues which arose during trial, and the like.

*consequence* of plaintiff's decision to reject the mediation evaluation. Given the mediation rule, I see no reason to strap defendant with this burden when this case would have been settled without trial had only plaintiff accepted the mediation evaluation. Moreover, I cannot believe that such a result was intended by the Supreme Court.

As I see it, the fundamental question is whether it is reasonable for an attorney to expect to be paid for all of his time when he undertakes a trial and delays at the courthouse result in less than 100% of his time actually being spent on that trial. What a lawyer sells is his time, and I do not see anything unreasonable about an attorney expecting to be compensated for periods he is in the courthouse, waiting for a harried judge to return his attentions to the trial of his cause.

In its analysis of this issue, the majority presents the following whimsical hypothetical to demonstrate the absurdity of the construction of GCR 1963, 316.7 which I believe was intended:

"Taken to its logical extreme, defendant's argument would hold plaintiff liable for all costs incurred in the trial of a case, even if those costs were the direct result of thousands of hours of unjustifiable delays ordered by a trial judge over both parties' objections. A trial which could foreseeably have been completed in several days, for example, could run several months through no fault of either party. Applying defendant's reasoning to this hypothetical, plaintiff could be liable for many times the reasonable foreseeable cost of trial."

I find it highly dubious that any trial judge in the history of Michigan jurisprudence has ever ordered "thousands of hours of delays"—justifiable or unjustifiable—over the objections of the parties. As a trial judge, I find that it is generally attor-

neys who desire continuances and generally trial judges who attempt to resist these delays in an effort to maintain some semblance of control over their dockets. Moreover, even if a trial court was determined to vex the parties with "thousands of hours of unjustifiable delays", the parties could quickly short circuit the trial court's scheme by seeking an order of superintending control. Indeed, I cannot fathom how a trial court could possibly waste "thousands" of attorney hours on a case, even if it wanted to do so.

Assuming that the majority's fanciful hypothetical could ever come to pass, contrary to the majority's position, the logical extension of the construction of GCR 1963, 316.7 which I advocate does not compel the result that the party rejecting mediation would be liable for all of the opposition's attorney fees. There is an obvious distinction between the situation presented here and a case in which the trial judge decides to annoy the parties by wasting their time over their objections. Given the difference between the real and imagined scenario, various rationales come to mind to allow recovery of attorney fees in the former, but not in the latter, situation. I choose not to expound on these possibilities, however, since they are unnecessary to the resolution of this case, and, at least in respect to a scenario much like that cast by the majority, are almost certainly never going to be applicable in any future case.

### III

The majority fails to address plaintiff's argument that the trial court improperly awarded attorney fees to both Cotter and Gun because there has been no showing that two attorneys were "necessitated by the rejection of the panel's

evaluation". To the extent that plaintiff suggests that it is never reasonable to award fees to compensate more than one attorney, I specifically disagree with its position. The reasonableness of awarding fees to more than one attorney turns on the specific circumstances of the case. For instance, in complex litigation—either in the sense that the applicable law is highly technical, uncertain or obscure or in the sense that time-consuming preparation is necessary to adequately assimilate and present the facts at trial—it is not unreasonable to have more than one attorney appear at the trial. On the other hand, it would be unreasonable to utilize more than one attorney at trial on a routine matter which involves straightforward presentation of evidence and the application of well settled legal principles to this evidence.[6]

Under the circumstances of this case I believe that it was not unreasonable to award fees to both Cotter and Gun. Defendant initially retained one attorney who filed an answer to plaintiff's complaint and the counterclaim. Thereafter, defendant's insurer retained Cotter to defend against plaintiff's action. Cotter asserts that defendant asked him to pursue the counterclaim. However, Cotter declined to undertake this representation, believing that a conflict of interest could arise. Moreover, there was apparently little, if any, duplication of effort by Cotter and Gun in respect to discovery and pretrial proceedings. Under these

---

[6] I do not imply that, where several attorneys help prepare a case for trial after the rejection of a mediation evaluation, all reasonable fees incurred in conducting this preparation are not recoverable pursuant to GCR 1963, 316.8. Clearly it is not objectionable that several attorneys work on different aspects of necessary pretrial preparation rather than entrusting this preparation to one attorney so long as there is no duplication of effort between the various lawyers. At the same time, however, it still might be unreasonable to use more than one attorney in the actual trial of the case which does involve duplication of time in court.

circumstances, I do not believe the trial court's decision to award fees to both Cotter and Gun was in error.

## IV

Plaintiff's contention that Gun should not be awarded attorney fees because defendant did not prevail on his counterclaim presents a troublesome question. However, I am ultimately persuaded by the trial court's reasoning in affirming the award of attorney fees to Gun. During the proceedings on defendant's motion brought under GCR 1963, 316.8, for those costs and attorney fees incurred in the prosecution of the counterclaim, the trial court noted:

"When the parties put a file to the mediation panel in gross without asking for separate figures from the mediators, they're going to get one figure in return. Quite obviously, after the fact, we are in no position now to go back and second guess what may have gone on in their minds when we didn't ask for it at the time of mediation. When the defendant accepted the mediation he accepted that single award, and that would have terminated the case totally. When the plaintiff rejected the award made by the mediation, that rejection necessitated the trial that was held."

Plaintiff could have protected itself by asking for separate evaluations of the complaint and counterclaim. It did not do so, and, on appeal, we have no way of ascertaining whether the mediation panel's $25,000 evaluation was arrived at by setting off what it believed the counterclaim was worth from a sum in excess of $25,000 believed to be due to plaintiff on its complaint. Under these circumstances, I cannot say that the trial court erred in awarding Gun attorney fees.

The majority asserts that as an absolute prerequisite to an award of costs under GCR 1963, 316.7(b)(1), the party must prevail. This is a facially untrue statement since, if it were true, defendant would not be entitled to any attorney fees in this case since plaintiff prevailed in his action. As such, I do not deem it dispositive that defendant's counterclaim proved unsuccessful. Of more import to me is that plaintiff's rejection of the evaluation necessitated the trial and caused fees to be incurred in the prosecution of the counterclaim.

It is basic to trial practice that attorneys are obligated to make a record below to preserve claims of error for appellate review. Here, plaintiff failed to make a good record when it did not request separate evaluations of the claim and counterclaim. Unlike the majority, I believe plaintiff should bear the consequences of its failure to create an adequate record for appellate review.