BURKE v DAWN DONUT SYSTEMS, INC

Docket No. 79488. Submitted May 9, 1985, at Detroit.—Decided July
19, 1985. Leave to appeal denied, 424 Mich 906.

Plaintiffs, James and Kathryn Burke, doing business as Variety
Donut & Coffee Shoppe, brought an action in the Macomb
Circuit Court against defendant, Dawn Donut Systems, Inc.,
alleging trademark infringement and unfair competition and
seeking money damages and equitable relief. Defendant coun-
terclaimed for equitable relief. Plaintiffs' claims went to media-
tion and the panel returned an evaluation of no cause of action.
Plaintiffs rejected the mediation panel's valuation. The court,
Kenneth N. Sanborn, J., granted a judgment of no cause of
action against plaintiffs and dismissed defendant's counter-
claim. The court granted costs, including attorney fees, to
defendant pursuant to the court rule regarding mediation since
plaintiffs did not obtain a judgment 10% greater than the
mediation evaluation. Plaintiffs appealed. *Held:*

1. The court did not clearly err in determining that the term
"Variety Donuts" had not acquired a secondary meaning.

2. The court did not err in the award of costs pursuant to the
court rule on mediation. The fact that plaintiffs prayed for
equitable relief as well as money damages does not preclude
the applicability of the court rule nor does a local court rule
allegedly in conflict with the general court rules. Further,
defendant did not waive the application of the rule.

3. The court was not clearly erroneous in its calculation of
the amount of costs awarded.

Affirmed.

1. TRADE REGULATION — TRADE NAME — ASSOCIATION OF NAME —
   SECONDARY MEANING.
   Words or symbols used in connection with one's goods, services,

REFERENCES

Am Jur 2d, Arbitration and Award §§ 167 *et seq.*

Am Jur 2d, Trademarks and Tradenames §§ 64-68.

Liability of parties to arbitration for costs, fees, and expenses. 57
ALR3d 633.

Geographical extent of protection of word or symbol under doctrine
of secondary meaning. 41 ALR3d 434.

or business or physical attributes of goods not ordinarily appropriable as a technical trademark or a trade name, are deemed to have acquired a "secondary meaning" when they have become associated in the minds of purchasers or customers with the source or origin of goods or services rather than with the goods or services themselves; among the factors to be considered in determining whether a mark has acquired a secondary meaning are: (1) the length and manner of its uses; (2) the nature and extent of advertising and promotion of the mark; and (3) the efforts made to promote a conscious connection in the mind of the public between the mark and the business.

2. COSTS — MEDIATION — COURT RULES.

A trial court is not precluded from assessing costs against a plaintiff who rejects a mediation award and subsequently fails to obtain a judgment more than 10% greater than the award merely because the complaint sought equitable relief in addition to money damages (GCR 1963, 316).

3. TRIAL — MEDIATION — COURT RULES.

The General Court Rule regarding mediation applies to mediation in all circuit courts except the third (Wayne County) (GCR 1963, 316.1[b]).

*Burton, Parker & Schramm* (by *Robert C. Brandenburg),* for plaintiffs.

*Edward J. Szpiech,* for defendant.

Before: WAHLS, P.J., and J. H. GILLIS and S. EVERETT,* JJ.

PER CURIAM. Following a bench trial, a judgment of no cause of action was entered in the Macomb County Circuit Court against the plaintiffs in this suit for trademark infringement and unfair competition. Defendant's counterclaim to restrain plaintiffs from the use of the term "Variety Donuts" was also dismissed. Defendant was granted $10,205.75 in costs pursuant to GCR 1963,

* Circuit judge, sitting on the Court of Appeals by assignment.

316.7. Plaintiffs now appeal as of right the judgment for defendant and award of costs.

Plaintiffs are owners of the Variety Donut & Coffee Shoppe located in St. Clair Shores, Michigan. From the time the shop was opened in 1964, plaintiffs have used the term "Variety Donuts" to promote their shop and advertise their product. For instance, order forms, receipts, doughnut boxes and the sign outside their store bore the words "Variety Donuts". The term was also used in answering the shop's telephone and in advertisements placed in newspapers and other media.

On January 30, 1980, defendant, Dawn Donut Systems, Inc., placed an advertisement in the Detroit Free Press utilizing the term "Variety Donuts" in connection with a promotional sale of their doughnuts at 15 cents each. Plaintiff James Burke contacted Gary Hurand, the defendant's president, and demanded that defendant cease its use of the term. Mr. Hurand declined the invitation, and the term was used again in subsequent advertising.

On March 18, 1980, plaintiffs filed their complaint in the Macomb County Circuit Court alleging trademark infringement and unfair competition through defendant's use of the mark "Variety Donuts". Defendant filed a counterclaim asserting prior use and a superior common-law right to the term. Further, defendant sought exclusive use and appropriation of the term in its "geographical area of expansion", which defendant defined to include Macomb and surrounding counties.

On May 4, 1981, a mediation hearing was held, which resulted in an evaluation of no cause of action in favor of defendant. The mediation panel did not make a separate finding as to the defendant's counterclaim, nor was it requested to do so

by the parties. The mediation evaluation was accepted by defendant and rejected by the plaintiffs.

The case therefore proceeded to trial, and on December 28, 1982, the trial court issued its opinion. The trial court found that the term "Variety" was commonly used in the trade to describe a type of doughnut which is sold in numerous variations, and thus it concluded that plaintiffs had failed to establish a protectable right to exclusive use of the term "Variety Donuts". The court also found no evidence of unfair competition. As to defendant's counterclaim, the trial court granted plaintiffs a judgment of no cause of action on the ground that the term "Variety Donuts" was merely descriptive, thus giving no rise to rights protectable in law or equity.

Subsequent to the issuance of the trial court's opinion, plaintiffs brought a motion for new trial while defendant moved for entry of judgment and assignment of costs pursuant to GCR 1963, 316, due to the plaintiffs' failure to obtain a verdict 10% greater than the award of the mediation panel. Several hearings were held to determine the amount of costs awardable to defendant and the reasonableness of the attorney fees claimed, after which total costs in the amount of $10,205.75 were granted to defendant.

On appeal, we first address the plaintiffs' claim that the trial court erred in finding that the mark "Variety Donuts" was merely descriptive, without a secondary meaning, and thus not protectable. A mark can be characterized as descriptive if it naturally and normally directs attention to the qualities, ingredients, appearance, effect, purpose or other features of the goods or services. 3 Callmann, Unfair Competition, Trademarks & Monopolies, (4th ed), § 18.03, chapter 18, p 7. We must agree with the trial court that the term "Variety

Donuts" is merely descriptive. Testimony offered at trial by defendant's president Gary Hurand revealed that the term is commonly used in the bakery industry to designate the availability of more than one type of doughnut. Hurand also indicated the defendant had long used the term "Variety Donuts", along with similar usage of "Variety Rolls" and "Variety Breads". This testimony was corroborated by evidence that the "Variety Donuts" term has been used throughout the state by various bakery companies aside from the defendant. In contrast, the only evidence presented by plaintiffs to support their characterization of the term as a unique mark was plaintiffs' own statement that they had not seen any other use of the mark prior to 1978. Plaintiffs admitted, however, that they did not attend trade shows or read trade journals.

The evidence presented at trial thus clearly supported the conclusion that in the bakery industry the term sought to be protected by plaintiffs has come to refer to a particular feature of a bakery product, namely, the availability of serveral types of doughnuts. As such, the term is merely descriptive. We must therefore consider whether the trial court erred in concluding that "Variety Donuts" had not developed a secondary meaning through its usage by the plaintiffs.

As explained by this Court in *Boron Oil Co v Callanan,* 50 Mich App 580; 213 NW2d 836 (1973):

"Words or symbols used in connection with one's goods, services, or business, or physical attributes of goods, not originally appropriable as a technical trademark or a trade name, are deemed to have acquired a 'secondary meaning' when they have become associated in the minds of purchasers or customers with the source or origin of goods or services rather than with the goods or services themselves. *Armstrong Paint &*

*Varnish v Nu-Enamel Corp,* 305 US 315; 59 S Ct 191; 83 L Ed 195 (1938); *Barton v Rex-Oil Co,* 2 F2d 402; 40 ALR 424 (CA 3, 1924)." 50 Mich App 583.

Among the factors to be considered in determining whether a mark has acquired a secondary meaning are: 1) the length and manner of its uses; 2) the nature and extent of advertising and promotion of the mark; and 3) the efforts made to promote a conscious connection in the mind of the public between the mark and the business. *Boron Oil, supra,* pp 583-584. Unless the plaintiff successfully established that an association with the source or origin of the goods predominates over the descriptive significance of the trademark, no secondary meaning has been acquired. *Steem Electric Corp v Hartzfield-Phillipson Co,* 118 F2d 122 (CA 7, 1940).

At trial, plaintiffs established that they had operated under the name "Variety Donuts" since 1964 and had used it for advertising purposes and in sponsoring local sports teams. Plaintiffs also presented five witnesses who testified that the term "Variety Donuts" had come to be associated with plaintiffs' business. However, each of the witnesses was a regular customer or personal friend of the plaintiffs. Further, three of the witnesses admitted that the term "Variety Donuts" also meant a variety or assortment of donuts. Given the small sampling and relationship of the witnesses to the plaintiffs, we can understand the trial court's failure to find the evidence persuasive as to the meaning of "Variety Donuts" in the appropriate market area. Further, in light of the strong evidence presented by defendant regarding the general use of the term in the bakery industry and in the advertising of similar products, the trial court's finding that "Variety Donuts" did not ac-

quire a secondary meaning in the market area associated with plaintiffs' business was not clearly erroneous.

Plaintiffs also complain of the trial court's refusal to permit the introduction of testimony from plaintiff James Burke regarding the practice of his customers to refer to his donuts as "Variety Donuts". We need not consider the merits of plaintiffs' argument since, even if in error, the trial court's exclusion of the evidence could not have been prejudicial. Aside from the fact that plaintiff Kathryn Burke was allowed to testify as to how her customers referred to her product, several of the customers themselves appeared on behalf of the plaintiffs and testified that they referred to the store, although not the product, as "Variety Donuts". Thus, since the evidence excluded by the trial court was admitted through the testimony of other witnesses, plaintiffs were not prejudiced by the trial court's ruling.

Plaintiffs' next assignment of error concerns the trial court's assessment of costs pursuant to GCR 1963, 316.7(b)(1) due to the failure to obtain a verdict 10% greater than the mediation award. Plaintiffs argue first that GCR 1963, 316 was inapplicable to this case since, under subsection 1(a), the rule is limited to civil cases "in which the relief sought consists of money damages or division of property". Plaintiffs argue that their request for equitable relief rendered GCR 1963, 316 inapplicable. We disagree. While it is true that plaintiffs sought to enjoin defendant from further use of the mark "Variety Donuts", they also sought a recovery for damages arising out of the appropriation of the mark. Thus, the requested relief did in fact consist, albeit partially, of money damages. We do not agree that the relief must consist exclusively

of money damages before GCR 1963, 316 becomes applicable.

Plaintiffs further assert that Macomb County Local Rule 10, and not GCR 1963, 316, should have been applicable since the evaluation form prepared by the mediation panel stated that costs would be assessed in accordance with local rule 17.[1] Again, we cannot agree. It is obvious that the evaluation form was prepared prior to the Michigan Supreme Court's adoption of GCR 1963, 316 on May 9, 1980. However, pursuant to GCR 1963, 927.1, any local court rule which conflicts with the provisions of the general court rules is invalid. Since plaintiffs' construction of local court rule 17 is contrary to our construction of GCR 1963, 316 in that the local rule allegedly prohibits cost assessment in any case in which equitable relief is sought, whether exclusively or not, the local rule would be superseded by GCR 1963, 316. The lack of merit in plaintiffs' argument is further evidenced by subsection 1(b) of rule 316, which specifically provides for the application of the general court rule to mediation proceedings in all courts other than the circuit court for the third judicial circuit (Wayne County).

We also reject plaintiffs' argument that defendant waived its right to request an application of the provisions of GCR 1963, 316 for purposes of assessing costs since it did not object to the statement contained on the mediation panel's evaluation form that local rule 17 would govern. We cannot agree that defendant should be punished for correctly assuming that the trial court would

[1] Plaintiffs seek an application of the local rule due to their belief that it prevents the assessment of costs in any case in which equitable relief is sought, whether or not money damages are also requested. We need not decide the validity of this proposition due to our conclusion regarding the applicability of the local rule.

apply the court rules mandated by the Michigan Supreme Court.

Finally, plaintiffs contend that the trial court erroneously awarded costs incurred by the defendant in the pursuit of its counterclaim, contrary to this Court's decision in *Maple Hill Apartment Co v Stine*, 131 Mich App 371; 346 NW2d 555 (1984). We find no merit to this argument. As noted in the trial court's opinion of June 4, 1984, the *plaintiffs failed to offer any evidence to rebut the defendant's representation that none of the costs requested were attributable to the counterclaim.* In light of the plaintiffs' failure to offer rebuttal evidence on this point, we cannot conclude that the trial court's findings were clearly erroneous. *Sweetman v State Highway Dep't*, 137 Mich App 14; 357 NW2d 783 (1984). Therefore, the trial court's award of $10,205.75 in costs to defendant is affirmed.

Affirmed.