*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES STEFANSKI,

Plaintiff-Appellant,

UNPUBLISHED
January 4, 2024

v

No. 364851
Saginaw Circuit Court
LC No. 22-046428-NZ

SAGINAW COUNTY 911 COMMUNICATIONS
CENTER AUTHORITY,

Defendant-Appellee.

Before: RIORDAN, P.J., and MURRAY and M. J. KELLY, JJ.

MURRAY, J. (*concurring*).

I fully concur in the majority opinion, but write separately to briefly explain why I respectfully disagree with my concurring colleague. As detailed below, the plain meaning of the controlling words within MCL 15.362 does not include common law principles.

MCL 15.362 is part of the Whistleblower's Protection Act (WPA) and provides a cause of action for a person who "reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body . . . ." In *Nyman v Thomson Reuters Holdings, Inc*, 329 Mich App 539, 544; 942 NW2d 696 (2019), this Court highlighted the means by which we determine the meaning of a statute:

> This issue requires us to engage in statutory interpretation. "When construing a statute, this Court's primary goal is to give effect to the intent of the Legislature. We begin by construing the language of the statute itself. When the language is unambiguous, we give the words their plain meaning and apply the statute as written." [*Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007)] (citation omitted). "We must examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme." *Ally Fin Inc v State Treasurer*, 502 Mich 484, 493; 918 NW2d 662 (2018) (quotation marks and citation omitted). "In doing so, we consider the entire text, in view of its structure and of the physical and logical relation of its many parts."

-1-

*Id.* (quotation marks and citation omitted). Proper statutory interpretation requires: (1) reading the statute as a whole, (2) reading its words and phrases in the context of the entire legislative scheme, (3) while considering both the plain meaning of the critical words and phrases along with their placement and purpose within the statutory scheme, and (4) interpreting the statutory provisions in harmony with the entire statutory scheme. *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009). "If the language is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction is not permitted." *Deruiter v Byron Twp*, 325 Mich App 275, 283; 926 NW2d 268 (2018), [rev'd on other grounds 505 Mich 130 (2020)] (citation omitted). "[W]e must give effect to every word, phrase, and clause and avoid an interpretation that would render any part of the statute surplusage or nugatory." *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 361; 917 NW2d 603 (2018) (quotation marks and citation omitted).

The underlying purpose of the WPA is protection of the public. *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 378; 563 NW2d 23 (1997). The statute "meets this objective by protecting the whistleblowing employee and by removing barriers that may interdict employee efforts to report violations or suspected violations of the law." *Id.* at 378-379. The WPA is a remedial statute and must be liberally construed to favor the persons that the Legislature intended to benefit. *Chandler v Dowell Schlumberger, Inc*, 456 Mich 395, 406; 572 NW2d 210 (1998).

Plaintiff argues, and the concurrence agrees, that "law" as used in MCL 15.362 includes the common law as developed by the courts. The argument is primarily anchored in dictionary definitions of "law" and "promulgate." However, in my view the Legislature has provided some guidance on the meaning of "law," and it only includes statutes passed by the Legislature, laws initiated by the people, and executive orders issued pursuant to Const 1963, art 5, § 2; MCL 8.8. That statute, MCL 8.8, is a part of chapter 8, which contains sections setting forth definitions, rules of statutory construction, and other provisions regarding the general application of statutes. See MCL 8.1. Although MCL 8.8 is not within the definitional section of MCL 8.3, it is within chapter 8 regarding statutes, and contains a definition of "law" that is to be used in conjunction with applying the Michigan Compiled Laws.

Additionally, to read "law" within MCL 15.362 in the manner defined in MCL 8.8 is consistent with the words and purposes of the WPA. As we have recognized, that purpose is "to protect the integrity of the law by removing barriers to employee efforts to report violations of the law. Inherent in the WPA is a purpose to protect the public by protecting employees who report violations of laws and regulations." *Terzano v Wayne Co*, 216 Mich App 522, 530-531; 549 NW2d 606 (1996) (quotation marks and citations omitted). Because the words of the statute and its purpose are centered on reporting violations of "laws" or "rules and regulations," WPA claims typically "involve[] the violation of laws more closely connected with the employment setting, such as Health Code and safety violations, or illegal labor practices[.]" *Dudewicz v Norris-Schmid, Inc*, 443 Mich 68, 75; 503 NW2d 645 (1993), overruled in part on other grounds by *Brown v Mayor of Detroit*, 478 Mich 589; 734 NW2d 514 (2007) (citations omitted). Though "there is no limitation in the statute to these types of activities," *id.* (which involved violation of the criminal code), the plain words of the statute are tied to laws that are enacted by the legislature or

promulgated by the executive—whether at the local, state or federal level of government. Each law, rule or regulation is readily identifiable and compiled in an official government source—the Michigan Compiled Laws, the state administrative code, local ordinances, the United States Code, or the Code of Federal Regulations. It is in those sources that the policy-making bodies have set out the rules that employers must follow, and it is a violation of those rules—whether in statute, rule or regulation—that the Michigan Legislature wanted enforced by providing protection to employees willing to report violations.

The concurrence opines that common-law decisions fall within the term "law" because "judicial decisions, which put the common-law into force or effect, are laws promulgated under the laws of this state by a political subdivision of this state, i.e., the judiciary." There are a couple of flaws in this statement. For one, our Supreme Court—the court entrusted to determine the extent of Michigan's common law, see *Roberts v Salmi*, 308 Mich App 605, 631; 866 NW2d 460 (2014)—is not a political subdivision of the state, it is part of a separate branch of government. See Const 1963, art 3, § 2 (the judiciary is one of three branches of state government) and *People v Ayers*, 182 Mich 241, 247; 148 NW 383 (1914) (recognizing "counties, townships, cities, and villages" as political subdivisions).[1] Nor do the courts "promulgate" their decisions "pursuant to the law of this state." In legal circles—and particularly when the Legislature uses the term— "promulgate" is in reference to administrative agencies issuing rules and regulations pursuant to statutory authority. See, e.g., MCL 24.233 and *Clonlara Inc v State Board of Educ*, 442 Mich 230, 239; 501 NW2d 88 (1993) ("Rules adopted by an agency in accordance with the APA have the force and effect of law. They must be promulgated in accordance with the procedures set forth in the APA, and are not valid if those procedures are not followed."). In this same vein, when our Supreme Court acts pursuant to its administrative rule-making authority under the constitution, art 6, § 5, it is referred to as the Court's ability "to promulgate rules of practice and procedure." *People v Reichenbach*, 224 Mich App 186, 192; 568 NW2d 383 (1997). See also *Maple Hill Apartment Co v Stine*, 131 Mich App 371, 375; 346 NW2d 555 (1984), vacated and remanded on other grounds 422 Mich 863 (1985) ("We acknowledge the Supreme Court's authority to promulgate rules regulating practice and procedure (as opposed to substantive rules) in the courts, Const 1963, art 6, § 5."). Thus, when acting in a legislative fashion adopting or amending court rules, the Court is promulgating rules. But no court has held that to develop the common law on a case-by-case basis is to "promulgate" the "law" "pursuant to the law of this state."[2]

---

[1] *Thirty-Sixth District Court v Owen*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359059); slip op at 4, recently held that a local district court with limited geographic jurisdiction is a political subdivision for purposes of the Headlee Amendment, art 11, § 3 of our state constitution. But that provision is unique to itself, and even under *Thirty-Sixth District Court*, the Supreme Court would not fit the test for a political subdivision.

[2] Interestingly, Minnesota's version of the WPA contained language "very similar" to that contained in MCL 15.362, *Pace v Edel-Harrelson*, 499 Mich 1, 8 n 15; 878 NW2d 784 (2016), but in 2013 the Minnesota Legislature amended the statute to include the protection of reports of violations of the common law, *Moore v City of New Brighton*, 932 NW2d 317, 324 (Minn App,

Finally, to read "law" to mean statutory law (whether originating with the legislature, people or through the governor) is not only consistent with the words and purpose of the WPA, but including the common-law principles espoused by the courts would be inconsistent with those words and purposes.[3] As one panel previously concluded,

> Plaintiff cited no authority to support the proposition that a lawsuit alleging exclusively common-law claims like defamation, fraud, or invasion of privacy constitutes report of a violation of law. Further, were we to read the WPA so broadly, protected activity would include any dispute between an employer and an employee that resulted in a lawsuit. The WPA would then apply to breach of contract suits and other common-law claims that have no public dimension. [*Meier v Detroit Diesel Corp*, unpublished per curiam opinion of the Court of Appeals, issued July 27, 2006 (Docket No. 268009), p 2.]

For these additional reasons, I concur in the decision to affirm the trial court's order granting defendant's motion for summary disposition.

/s/ Christopher M. Murray

---

2019). If MCL 15.362 should be expanded to include all areas of the common law, it should be done by the Legislature, not the courts.

[3] As the concurrence notes, *Vagts v Perry Drug Stores, Inc*, 204 Mich App 481, 485; 516 NW2d 102 (1994), which involved a non-WPA public policy claim, did equate "law" in part with the common law. But even so, our Court subsequently held that general negligence type claims do not fall within that definition of "law."

> The "standard of care" in the medical profession is not based on an objective legal source, but must be established through expert testimony on a case-by-case basis. See *Gonzalez v St. John Hosp & Medical Ctr (On Reconsideration)*, 275 Mich App 290, 294; [739] NW2d 392 (2007). Its subjectivity does not provide most individuals a clear and explicit delineation or understanding of the "law." See *id*. Therefore, it cannot be said that a violation of the physician's standard of care is a violation of objective "law," and one's refusal to violate the standard of care does not meet the requirements to prove wrongful termination in violation of public policy. [*McIntire v Michigan Institute of Urology*, unpublished per curiam opinion of the Court of Appeals, issued January 23, 2014 (Docket No. 311599), p 7.]