HABERKORN v CHRYSLER CORPORATION

Docket Nos. 148831, 151110. Submitted January 5, 1995, at Detroit. Decided April 28, 1995, at 9:45 A.M. Leave to appeal sought.

Caryl L. Haberkorn and others brought a products liability action in the Wayne Circuit Court against Chrysler Corporation, as successor to American Motors Corporation, seeking damages for injuries sustained when a 1974 Jeep CJ-5 driven by Caryl and containing her three children rolled over and ejected Caryl and two of her children. A jury found the defendant negligent in the design of the vehicle with regard to occupant protection or crashworthiness, i.e., occupant protection of the windshield, top, roll bar, or seat belts, and that such negligence was the proximate cause of the plaintiffs' injuries. The jury found Caryl's damages to be $2.3 million and the other plaintiffs' damages to be $400,000. The court, Robert J. Colombo, Jr., J., reduced Caryl's damages and portions of the other plaintiffs' damages by seventy percent in response to the jury's finding regarding Caryl's comparative negligence. The court also applied the collateral source rule to reduce Caryl's damages by the amount of social security disability benefits that she had received at the time of the judgment. Noting that both parties had rejected a mediation evaluation of $1.5 million, the court awarded the defendant actual costs as mediation sanctions under MCR 2.403(O), which the court calculated to be $562,712.40. The court entered a judgment for the plaintiffs in the amount of $861,477.60, plus prejudgment interest. The plaintiffs appealed from the judgment and the defendant cross appealed. (Docket No. 148831.) The plaintiffs also appealed from the award of mediation sanctions to the defendant. (Docket No. 151110.) The appeals were consolidated.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, (New Topic Service) Alternative Dispute Resolution §§ 10, 24; Damages §§ 583, 584; Evidence §§ 324, 327, 328, 330, 331, 333, 1032; Interest and Usury §§ 96, 97; Jury §§ 148, 151, 155, 244, 246.

See ALR Index under Alternative Dispute Resolution; Collateral Source Rule; Documentary Evidence; Evidence Rules; Interest on Money; Jury and Jury Trial.

1. The trial court did not abuse its discretion in excluding under MRE 403 evidence of a 1981 consent order and agreement that American Motors Corporation and the Federal Trade Commission had entered into regarding AMC's advertising about the driving characteristics of Jeep CJ-5, CJ-6, and CJ-7 models that AMC produced and AMC's responsibilities thereunder regarding the warning of drivers of such vehicles. The consent order and agreement, which the plaintiffs sought to introduce as evidence that the defendant was negligent in warning about the handling characteristics of Jeep CJ vehicles, had marginal probative value and the danger of prejudice from its admission was high.

2. The plaintiffs' claim that the trial court erred in excusing a juror for health reasons midway through the trial was not preserved for appellate review.

3. The plaintiffs presented evidence that the defendant knew about the risk of Jeep rollovers in the early 1970s. A material issue of fact existed regarding the defendant's negligence in designing the Jeep CJ vehicles for crashworthiness. The trial court did not err in denying the defendant's motion for a directed verdict with regard to that claim.

4. The trial court did not err in admitting into evidence a report the plaintiffs obtained from nonprivileged parties that the defendant claimed was the work product of engineers it had retained to conduct for litigation purposes an investigation of the vehicles' handling characteristics.

5. The trial court did not abuse its discretion in admitting evidence of an envelope that allegedly was mailed with the FTC-ordered warnings to Jeep owners after finding the envelope authenticated pursuant to MRE 901(b)(4).

6. The trial court did not err in admitting into evidence certain statistical studies that the plaintiffs used to show that the defendant had notice of the Jeep's propensity to roll over more easily than other vehicles.

7. The trial court properly excluded evidence of police reports of other Jeep rollover accidents occurring in the vicinity of the plaintiffs' accident site. The defendant did not lay a foundation for the admission of the reports.

8. The defendant's argument that the court erred in allowing the plaintiffs' counsel to exercise peremptory challenges against white jurors without first requiring counsel to proffer a nondiscriminatory basis for the challenges fails because the defendant did not make a prima facie showing that the totality of the circumstances gave rise to an inference of race-based discrimination.

9. The trial court erred in interpreting the prejudgment

interest statute, MCL 600.6013; MSA 27A.6013, to require the defendant to file its settlement offer with the court at the time it was made and in deeming the tolling provision for prejudgment interest inapplicable because the defendant delayed in filing its offer with the court. The statute does not provide that an offer of settlement made before the verdict may not be filed after the verdict. Subsection 7 of the statute requires the tolling of prejudgment interest between the date the defendant filed the offer and the date the judgment was rendered. The case must be remanded for recalculation of the prejudgment interest.

10. Contrary to the plaintiffs' argument, MCL 600.6013(10); MSA 27A.6013(10) does not require an offer of settlement to be made at least twenty-one days before trial.

11. The plaintiffs' April 25, 1991, offer of settlement was a bona fide offer of settlement under MCL 600.6013(11); MSA 27A.6013(11). The offer was not less than ninety percent of the amount of the judgment before prejudgment interest was added to the judgment.

12. The trial court erred in determining that Caryl's social security benefits and certain insurance benefits were not subject to the collateral source rule, MCL 600.6303; MSA 27A.6303. To the extent that Caryl's insurance benefits constitute life insurance coverage, as opposed to disability coverage, they are not a collateral source. The amount of premiums paid by Caryl for the policy's disability insurance component should have been deducted from the remaining disability benefits before reduction of the verdict. The case must be remanded for recalculation with respect to the collateral source rule.

13. The trial court did not err in deducting any collateral source benefits from the amount of the verdict before reducing the verdict to account for Caryl's comparative negligence. The court was not bound by the parties' stipulation of law to do otherwise.

14. An offer of judgment is not the same as an offer to settle. The defendant's March 1991 offer to settle did not constitute an offer of judgment for purposes of MCR 2.405(A)(1). The trial court did not err in applying MCR 2.403(O) instead of MCR 2.405 in awarding the mediation sanctions.

15. The meaning of the term "costs" in MCR 2.403(O)(1) is the same as "actual costs." The plaintiffs properly were found liable under the rule for an award of actual costs.

16. The trial court did not abuse its discretion with regard to

the award of attorney fees and expert witness fees for the defendant.

17. The trial court's enforcement of mediation sanctions did not deny the plaintiffs due process or equal protection.

18. The plaintiffs' misunderstanding of the meaning of "costs" versus "actual costs" in MCR 2.403(O)(1) and the meaning of an offer of judgment under MCR 2.405 is not the type of mistake sufficient to furnish a basis for relief under MCR 2.612(C)(1). The trial court's refusal to grant the plaintiffs relief under MCR 2.612(C)(1) was not an abuse of discretion.

Docket No. 148831 affirmed in part, reversed in part, and remanded. The order of mediation sanctions in Docket No. 151110 affirmed.

1. EVIDENCE — RELEVANT EVIDENCE — PREJUDICIAL EFFECT.

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice; unfair prejudice exists when marginally relevant evidence might be given undue or preemptive weight by the jury or when it would be inequitable to allow use of such evidence (MRE 403).

2. EVIDENCE — PREJUDICIAL EFFECT.

A court, in determining whether relevant evidence should be excluded because its probative value is substantially outweighed by its prejudicial effect, must balance many factors, including: the time necessary for presenting the evidence and the potential for delay; how directly the evidence tends to prove the fact in support of which it is offered; whether the evidence would be cumulative; how important the fact sought to be proved is; the potential for confusion; and whether the fact can be proved in another way involving fewer harmful collateral effects (MRE 403).

3. TRIAL — APPEAL — JURY — PRESERVING QUESTION.

A trial court's failure to comply with chapter 13 of the Revised Judicature Act, regarding jurors, does not affect the validity of the jury verdict unless a party makes a timely objection, demonstrates actual prejudice, and shows that the noncompliance was substantial (MCL 600.1354; MSA 27A.1354).

4. EVIDENCE — AUTHENTICATION.

A condition precedent to the admission of an item into evidence is authentication by evidence sufficient to support a finding that the matter in question is what its proponent claims; whether a document is properly authenticated is within the trial court's discretion (MRE 901[a]).

5. Trial — Jury — Peremptory Challenges — Race Discrimina-
   tion.

   A defendant claiming that a trial court erred in allowing the
   plaintiff's counsel to exercise peremptory challenges against
   white jurors without first requiring plaintiff's counsel to proffer
   a nondiscriminatory basis for the challenges must make a
   prima facie showing that the totality of the circumstances gave
   rise to an inference of race-based discrimination.

6. Judgments — Prejudgment Interest — Tolling of Interest.

   The tolling provision of the prejudgment interest statute may be
   applied to an offer of settlement that is made before the verdict
   is rendered and is filed with the court after the verdict (MCL
   600.6013; MSA 27A.6013).

7. Judgments — Prejudgment Interest.

   The requirement in the prejudgment interest statute that an offer
   of settlement must be accepted or rejected within twenty-one
   days does not require that the offer be made at least twenty-one
   days before trial (MCL 600.6013[10]; MSA 27A.6013[10]).

8. Judgments — Collateral Source Rule — Social Security Bene-
   fits — Disability Insurance Benefits.

   Social security benefits and insurance benefits representing dis-
   ability coverage for economic loss are collateral sources to
   which the collateral source rule applies (MCL 600.6303; MSA
   27A.6303).

9. Judgments — Mediation Sanctions — Offers of Judgment —
   Offers to Settle.

   An offer of judgment is not the same as an offer to settle for
   purposes of determining an award of mediation sanctions (MCR
   2.403[O], 2.405[A][1]).

10. Judgments — Mediation Sanctions — Excusable Neglect.

    A party's error in assessing the consequences of rejecting a
    mediation evaluation is not excusable neglect sufficient to
    furnish a basis for relief from the consequences of the rejection
    (MCR 2.612[C][1]).

*Goodman, Lister & Peters, P.C.* (by *Richard M.
Goodman*), *Williams & Youngblood, P.C.* (by *Carole
F. Youngblood*), and *Michael J. Steinberg,* for the
plaintiffs.

*Miller, Canfield, Paddock & Stone, P.L.C.* (by

*Stephen J. Ott, Erich H. Hintzen, Wolfgang Hoppe, Brian S. Westenberg,* and *Stefany L. Freeman*), for the defendant.

Before: JANSEN, P.J., and MICHAEL J. KELLY and HOOD, JJ.

MICHAEL J. KELLY, J. This is a products liability case arising out of an automobile accident during which plaintiff Caryl Haberkorn's[1] 1974 Jeep CJ-5 rolled over and ejected her. In Docket No. 148831, plaintiffs appeal as of right a judgment of the circuit court for plaintiffs in the amount of $861,477.60 (plus prejudgment interest). The judgment was entered after a jury trial in which the jury found $2.7 million in damages, which the court reduced in part by seventy percent consistent with the jury's findings regarding plaintiff's comparative negligence. Defendant cross appeals the same judgment, claiming that it was entitled to summary disposition or a directed verdict on all plaintiffs' claims. In Docket No. 151110, plaintiffs appeal as of right an award of mediation sanctions to defendant in the amount of $562,712.40. The appeals were consolidated.

I

In 1981, the American Motors Corporation entered into a consent agreement with the Federal Trade Commission regarding its advertising about the driving characteristics of Jeep CJ-5, CJ-6, and CJ-7 models, which AMC produced. Without admitting liability, AMC agreed to affix labels to the windshields of all new Jeep CJ vehicles to warn drivers that these vehicles handled differently

---

[1] Throughout this opinion, the use of "plaintiff" in the singular will refer to plaintiff Caryl Haberkorn.

from passenger cars and that sudden sharp turns and abrupt maneuvers could result in a loss of control. AMC also agreed to place similar warnings in all new Jeep CJ owners' manuals and to mail warning labels and manual supplements to all identifiable owners of 1972 and later model Jeep CJ vehicles.

In 1983, plaintiff Caryl Haberkorn purchased a 1974 soft-top Jeep CJ-5 from a private seller for her husband, plaintiff James Haberkorn. There was no warning label on the windshield, and the previous owner testified that he did not recall if he had received one in the mail. In the evening of June 26, 1986, plaintiff was driving the vehicle with her three children down a gravel road between twenty-five and fifty-five miles per hour. The vehicle bogged down in some sand or gravel, then began to fishtail. Plaintiff pumped the brakes and attempted to steer into the skid, but the steering was unresponsive. The vehicle headed for the side of the road and rolled over twice, ejecting plaintiff and two of her children. The children suffered only minor injuries, but plaintiff was left a paraplegic.

Plaintiffs initiated this action against defendant Chrysler Corporation, as successor to AMC, in November 1988. After extensive discovery and mediation, a jury trial was held from April through June 1991. The case was submitted to the jury on eight theories: (1) negligent design with respect to handling characteristics; (2) negligent design with respect to roll stability; (3) negligent design with respect to occupant protection or crashworthiness; (4) negligent testing; (5) breach of express warranty; (6) negligent warning with respect to handling characteristics; (7) negligent warning with respect to rollover characteristics; and (8) negligent warning with respect to crashworthiness.

The jury found defendant liable only on the

third theory, answering "yes" to the question on the jury verdict form that asked whether defendant was negligent in the design of the Jeep with regard to crashworthiness (i.e., occupant protection of the windshield, top, roll bar, or seat belts) and whether such negligence was the proximate cause of plaintiffs' injuries. The jury found plaintiff Caryl Haberkorn's damages to be $2.3 million and awarded an additional $400,000 to the remaining plaintiffs. However, the trial court reduced all plaintiff Caryl Haberkorn's damages and portions of the remaining damages by seventy percent in response to the jury's finding regarding plaintiff's comparative negligence. Applying the collateral source rule, the court reduced plaintiff's damages by the amount of social security disability benefits that she had received up to the time of judgment in October 1991. That judgment also awarded defendant actual costs as mediation sanctions under MCR 2.403(O), which the court calculated to be $562,712.40 in March 1992. Both parties had rejected a mediation evaluation of $1.5 million in November 1990.

II

Plaintiffs present two challenges to the jury's determination of comparative fault.

A

First, plaintiffs argue that the trial court erred in excluding under MRE 403 evidence of the FTC's 1981 consent order and agreement with AMC. We review the trial court's evidentiary rulings for abuse of discretion. *Davis v Wayne Co Sheriff,* 201 Mich App 572, 588; 507 NW2d 751 (1993). Under MRE 403, relevant evidence may be excluded if its

probative value is substantially outweighed by the danger of unfair prejudice. "Unfair prejudice" does not mean "damaging"; any relevant evidence will be damaging to some extent. Rather, unfair prejudice exists when marginally relevant evidence might be given undue or preemptive weight by the jury or when it would be inequitable to allow use of such evidence. *People v Harvey,* 167 Mich App 734, 745-746; 423 NW2d 335 (1988). Assessing probative value against prejudicial effect requires a balancing of several factors, including the time necessary to present the evidence and the potential for delay; whether the evidence is cumulative; how directly the evidence tends to prove the fact in support of which it is offered; how important the fact sought to be proved is; the potential for confusion; and whether the fact can be proved another way with fewer harmful collateral effects. *People v Oliphant,* 399 Mich 472, 490; 250 NW2d 443 (1976).

Plaintiffs sought to introduce the FTC agreement as evidence that defendant was negligent in warning about the handling characteristics of Jeeps.[2] However, the probative value of the agreement was marginal because there was no evidence that defendant actually breached the agreement and because the agreement merely showed *why* defendant sent warnings, not whether defendant did so negligently. The danger of prejudice was high because the jury could have mistaken the agreement as a government finding that the Jeeps were defective. The trial court did not abuse its discretion in deeming the probative value of the evi-

[2] Although this evidence appears irrelevant to the theory on which plaintiffs recovered—i.e., negligent design—plaintiffs contend that it would have affected the jury's finding of comparative fault because whether plaintiff was given adequate warning determined the degree to which the jury expected her to exercise care in handling the Jeep.

dence substantially outweighed by the danger of prejudice. Although plaintiffs claim that exclusion of the agreement created a danger of prejudice to them because the jury could believe that the warnings were sent voluntarily, and not under government coercion, any such prejudice was cured by the trial court's cautionary instruction that the jury was not to speculate regarding the reason why defendant sent the warnings. Further, exclusion of the agreement did not deprive the plaintiffs of proving inadequate warning by other means. In fact, plaintiffs presented extensive expert testimony that the exterior of the envelopes containing the warnings was insufficient to reflect the seriousness of their contents.

## B

Second, plaintiffs argue that the trial court erred in excusing a juror for health reasons midway through trial without first consulting with counsel and making a record of the conversation between the trial judge and the juror. However, plaintiffs failed to make a timely and specific objection or to move for a mistrial. When the topic of excusing jurors arose later in the trial, counsel's only concern was the possibility that other jurors might claim to fall ill. This issue is therefore not preserved for appellate review. *Wicklund v Draper,* 167 Mich App 623, 627-628; 423 NW2d 294 (1988). Furthermore, plaintiffs have failed to demonstrate prejudice. Under MCL 600.1354; MSA 27A.1354, failure to comply with chapter 13 of the Revised Judicature Act, concerning jurors, does not affect the validity of the jury verdict unless a party makes a timely objection, demonstrates actual prejudice, and shows that noncompliance was substantial.

### III

Defendant claims that, regardless of plaintiff's comparative fault, any jury verdict was inappropriate because plaintiffs did not establish a prima facie case in support of their crashworthiness design claim. Specifically, defendant claims that the trial court erred in denying its motion for a directed verdict. In deciding this issue, we review all the evidence presented up to the time of the motion in a light most favorable to plaintiffs and determine whether there was a material issue of fact. See *Stoken v J E T Electronics & Technology, Inc,* 174 Mich App 457, 463; 436 NW2d 389 (1988). Here, a material issue of fact existed regarding defendant's negligence in designing the Jeep CJ vehicles for crashworthiness.

An automobile manufacturer has a duty to design its product so as to eliminate any unreasonable risk of foreseeable injury to its occupants as a result of a collision. *Rutherford v Chrysler Motors Corp,* 60 Mich App 392, 400; 231 NW2d 413 (1975). See also *Shipman v Fontaine Truck Equipment Co,* 184 Mich App 706, 711; 459 NW2d 30 (1990). In determining whether a defect exists, the trier of fact must balance the risk of harm occasioned by the design against the design's utility. *Prentis v Yale Mfg Co,* 421 Mich 670, 688-689; 365 NW2d 176 (1984). A plaintiff has the burden of producing evidence of the magnitude of the risk posed by the design, alternatives to the design, or other factors concerning the unreasonableness of a design's risk. *Owens v Allis-Chalmers Corp,* 414 Mich 413, 429-432; 326 NW2d 372 (1982). Implicit in *Owens* is the requirement that such information be contemporaneous with the design.

Defendant claims there was no evidence that it knew about the risks of Jeep rollovers in the early

1970s, when it designed the vehicle. We disagree. Plaintiffs presented expert testimony regarding studies conducted before 1972 regarding the crashworthiness of soft-top vehicles. These studies showed that occupants were ejected far more often from such vehicles than from hard-top vehicles and that the consequences could be catastrophic. Expert testimony also revealed that the lap belts on Jeeps were not easily accessible and that, during the time plaintiff's vehicle was built, most other manufacturers of similar vehicles employed holsters or stalks on seat belts to make them accessible. Although an intracompany memorandum proposing safety changes to the Jeeps was dated 1983, plaintiffs' expert testified that the feasibility of such changes was known in 1973. Plaintiffs also presented the testimony of an automobile dealer who stated that he had installed two hundred roll cages on Jeep CJ vehicles in 1974 in addition to several seat belt holsters and many three-, four-, and five-point seat belt systems. Viewing the evidence in a light most favorable to plaintiffs, the trial court properly denied a directed verdict regarding plaintiffs' crashworthiness design claim.

IV

Defendant also argues that the trial court erred in admitting certain evidence.

A

First, defendant challenges the admission of a report obtained from an attorney organization in Alabama. Defendant claims that this document was the work product of engineers Roy Rice and William Milliken, whom defendant had retained to

investigate Jeep rollover and handling characteristics for litigation purposes, and that the report was therefore not discoverable. See MCR 2.302(B)(4)(b). However, the issue is the admissibility of such evidence, not its discoverability. Plaintiffs did not seek to discover the Milliken-Rice report; rather, they obtained it on their own from an independent source. According to defendant, "it is clear that, if the proposed evidence is not discoverable, it cannot be admissible." It is not so clear to us, especially because the report obviously fell into the hands of nonprivileged parties, and defendant fails to provide any authority or argument in support of its bald assertion. We therefore find no reason to overrule the decision of the trial court.

B

Second, defendant challenges the admission of an allegedly unauthenticated envelope that was mailed with the FTC-ordered warnings to Jeep owners. A condition precedent to admission of an item into evidence is authentication "by evidence sufficient to support a finding that the matter in question is what its proponent claims." MRE 901(a). Whether a document has been properly authenticated is a matter within the trial court's discretion. *Champion v Champion,* 368 Mich 84, 87-88; 117 NW2d 107 (1962).

At trial, plaintiffs sought to authenticate the envelope under MRE 901(b)(4), noting several aspects of its appearance, contents, substance, internal patterns, and other distinctive characteristics. Plaintiffs noted (1) that the FTC consent order required that the mailing be done by first-class mail, and the envelope was posted as first-class mail; (2) the office that conducted the mailing for defendant was located in Taylor, Michigan, and

the envelope bore a Taylor postmark; (3) the mailing company used a postage permit like that on the envelope; (4) the name and address on the envelope was that of American Motors Sales Corporation, as was the heading of the warning letter inside the envelope; and (5) a former Jeep dealer would testify that the envelope looked like all the other correspondence that he had received from defendant over the years. Under these circumstances, the trial court did not abuse its discretion in deeming the envelope authenticated.

C

Third, defendant challenges the admission of certain statistical studies that were used to show that defendant had notice of the Jeep's propensity to roll over more easily than other vehicles. We find no error. Plaintiffs' expert witness, who had a limited knowledge of statistics, testified to the best of his ability with respect to the studies' methodology, and defendant has failed to show how the studies were flawed. The trial court correctly noted that the accuracy was of limited importance where the evidence was offered only to show that defendant had notice of the Jeep's defect. The trial court gave a limiting instruction to the effect that the studies were to be considered as evidence of notice and not as evidence of a defect.

Defendant also contends that the studies should have been excluded under MRE 403 because a sophisticated entity such as defendant would have known that the studies were flawed, which would negate an inference that the studies put defendant on notice. This argument was not made below and is therefore not preserved for appellate review. *Booth Newspapers, Inc v Univ of Mich Bd of Regents,* 444 Mich 211, 234; 507 NW2d 422 (1993).

D

Finally, defendant challenges references made by plaintiffs' expert witness regarding Jeep rollover tests. Specifically, defendant contends that the conditions of the tests were not substantially similar to the conditions under which plaintiff's accident occurred. However, while defendant raised this argument with respect to a film of the tests, it did not raise such an objection to the expert's testimony. The trial court never addressed the "substantial similarity" argument with respect to the challenged testimony. The issue is therefore not preserved for appellate review. MRE 103(a)(1); *Thorin v Bloomfield Hills Bd of Ed,* 203 Mich App 692, 703-704; 513 NW2d 230 (1994). Moreover, any lack of substantial similarity did not prevent the evidence from being admitted for the limited purpose of demonstrating general principles of skidding, speed, and rates of turn. See *Kirk v Ford Motor Co,* 147 Mich App 337, 344; 383 NW2d 193 (1985); *Gorelick v Dep't of State Hwys,* 127 Mich App 324, 336; 339 NW2d 635 (1983).

V

Defendant also argues that certain evidence was erroneously excluded.

A

First, defendant challenges the exclusion of police reports of other Jeep rollover accidents occurring in the vicinity of plaintiff's accident site. We agree with the trial court's conclusion that defendant did not lay a foundation for the admission of the reports. If defendant intended to use them as evidence of what took place during plaintiff's accident, then it failed to show any similarity between

plaintiff's accident and the accidents in the reports. If defendant intended to use the reports in order to impeach plaintiffs' expert witness, then it failed to show that the expert had investigated the accidents in the reports or had testified previously with regard to the reports. The probative value of the reports was minimal at best and substantially outweighed by the needless delay that would have occurred if the details of the accidents in the report had been explored. MRE 403.

### B

Second, defendant argues that its videotape of "dynamic vehicle characteristics" should have been admitted if plaintiffs succeed in convincing this Court that their videotape should have been admitted. However, this issue is moot because plaintiffs do not seek admission of their videotape.

### VI

Next, defendant argues that the trial court erred in allowing plaintiffs' counsel to exercise peremptory challenges against white jurors without first requiring counsel to proffer a nondiscriminatory basis for the challenges. However, defendant has failed to show that the totality of the circumstances gave rise to an inference of race-based discrimination. Without such a prima facie showing of discrimination, defendant's argument must fail. See *Edmonson v Leesville Concrete Co, Inc,* 500 US 614, 631; 111 S Ct 2077; 114 L Ed 2d 660 (1991); *Batson v Kentucky,* 476 US 79, 96-97; 106 S Ct 1712; 90 L Ed 2d 69 (1986).

### VII

Having found no error in the trial court's evi-

dentiary rulings and in the jury's finding of liability regarding plaintiffs' crashworthiness design claim, we need not address defendant's argument that it was entitled to a directed verdict on plaintiffs' remaining claims, which did not form the basis of the jury verdict. Instead, we turn our attention to the amount of the judgment, which defendant challenges on three grounds.

A

First, defendant argues that the trial court miscalculated the amount of prejudgment interest. Specifically, defendant claims that its April 25, 1991, bona fide written settlement offer of $1,000,000 tolled the accrual date of the interest.

Defendant presented its offer between jury selections. A jury was selected on April 10, 1991, but was not sworn in. The following day, plaintiffs' counsel fell ill and the trial was postponed. Apparently, the jury was dismissed. Selection of a new jury began on April 29, 1991, four days after defendant's written settlement offer. This jury was sworn in on April 30, 1991. A verdict was reached on June 13, 1991. On August 6, 1991, defendant filed its April 25 written offer of settlement and plaintiffs' rejection of that offer. Judgment was entered on October 16, 1991.

The prejudgment interest statute in effect at the time of the judgment provided in relevant part:

(7) If a bona fide, reasonable written offer of settlement in a civil action based on tort is made by the party against whom the judgment is subsequently rendered, the court shall order that interest shall not be allowed beyond the date the written offer of settlement which is made and rejected by the plaintiff, and is filed with the court.

(8) Except as otherwise provided in subsection

(1), if a bona fide, reasonable written offer of settlement in a civil action based on tort is not made by the party against whom the judgment is subsequently rendered, or is made and that offer is not filed with the court, the court shall order that interest be calculated from the date of filing the complaint to the date of satisfaction of the judgment.

\* \* \*

(10) An offer made pursuant to this section which is not accepted within 21 days after the offer is made shall be considered rejected. A rejection, under this subsection or otherwise, does not preclude a later offer by either party.

(11) As used in this section:

(a) "Bona fide, reasonable written offer of settlement" means:

(i) With respect to an offer of settlement made by a defendant against whom judgment is subsequently rendered, an offer of settlement that is not less than 90% of the amount actually received by the plaintiff in the action through judgment. [MCL 600.6013; MSA 27A.6013.]

The trial court held that subsection 7 required defendant to file the settlement offer with the court at the time it was made. Otherwise, the court reasoned, the situation addressed in subsection 8 would never arise. Because defendant delayed in filing its offer with the court, the trial court deemed the tolling provision for prejudgment interest inapplicable.

We review the trial court's interpretation of the prejudgment interest statute de novo as a question of law. *Smeets v Genesee Co Clerk,* 193 Mich App 628, 633; 484 NW2d 770 (1992). The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature. *Farrington v Total Petroleum, Inc,* 442 Mich 201, 212; 501 NW2d 76 (1993). Statutory language should be

construed reasonably, keeping in mind the purpose of the act. *Dep't of Social Services v Brewer,* 180 Mich App 82, 84; 446 NW2d 593 (1989). As far as possible, effect should be given to every phrase, clause, and word. *Gebhardt v O'Rourke,* 444 Mich 535, 542; 510 NW2d 900 (1994).

We disagree with the trial court's interpretation of the tolling provision of the prejudgment interest statute. While subsection 7 concerns offers made by a party against whom judgment is "subsequently rendered," implying that an offer must be made before a verdict, the same wording is not employed in the portions of those subsections following subsection 7 that govern at what point interest is tolled. Nothing in subsection 7 implies that an offer of settlement *made before* the verdict may not be *filed after* the verdict. The relevant portion of subsection 7 provides that "interest shall not be allowed beyond the date the written offer of settlement which is made and rejected by the plaintiff, *and is filed with the court.*" (Emphasis added.)

Giving effect to subsection 8 does not require us to overlook the reference to filing dates in subsection 7. Subsection 8 governs situations where no offer is made at all, or where an offer is made but never filed. This is not the situation here or under subsection 7. Similarly, in arguing that interest should have been calculated from the time plaintiffs rejected its offer, sometime in April or May 1991, defendant ignores the reference to filing dates in subsection 7 and renders it meaningless.

One problem with subsection 7 is that it is ungrammatical. Defendant would have this Court insert the word "of" between the words "date" and "written." This undoubtedly would clarify the statute in favor of defendant's position. However, it would also make the reference to the filing dates

completely superfluous. We believe the grammar problem is better corrected by removing the word "which" between the words "settlement" and "is made." In fact, this is precisely what the Legislature did when it clarified subsection 7 in 1993 PA 78. Subsection 7 now reads:

> If a bona fide, reasonable written offer of settlement in a civil action based on tort is made by the party against whom the judgment is subsequently rendered and is rejected by the plaintiff, *the court shall order that interest not be allowed beyond the date the bona fide, reasonable written offer of settlement is filed with the court.* [Emphasis added.]

Because subsection 7 requires tolling of prejudgment interest between the date defendant filed the offer, August 6, 1991, and the date judgment was entered, October 16, 1991, we remand for recalculation of the prejudgment interest accordingly.

Plaintiffs also interpret the prejudgment interest statute. Plaintiffs first claim that, because subsection 10 requires an offer of settlement to be accepted or rejected within twenty-one days, any offer must be made at least twenty-one days before trial. Plaintiffs' interpretation of subsection 10 is not persuasive, and we reject it.

Plaintiffs also claim that defendant's April 25, 1991, offer of settlement was not a bona fide offer under subsection 11 because the offer of $1 million was less than ninety percent of the judgment award of $1,119,646. However, the latter figure includes prejudgment interest. Because the prejudgment interest statute addresses the circumstances under which such interest may be imposed, its starting point is necessarily the amount of the judgment before the addition of such interest. Plaintiffs cite no authority to the contrary.

Before prejudgment interest was added, the total award was $861,477.60. Defendant's offer is not less than ninety percent of this amount.

**B**

Second, defendant argues that the trial court failed to reduce the judgment by the full amount of plaintiff's future disability benefits under social security and under a combined life and disability insurance policy.[3] Defendant relies on the collateral source rule, which prevents a plaintiff from recovering the same expenses from both a defendant and a collateral source. *Warden v Fenton Lanes, Inc,* 197 Mich App 618, 623; 495 NW2d 849 (1992). The specific provisions of the collateral source rule are found in MCL 600.6303; MSA 27A.6303.[4] According to subsection 1, the statute

---

[3] Under her life insurance policy, plaintiff is entitled to receive disability benefits of $740 a month for fifty-eight months, which acts as a drawdown on her $60,000 life insurance benefit. These payments reduce her life insurance benefit dollar for dollar until approximately $20,000 remains. At that point, plaintiff is entitled to receive disability benefits of $532 a month for 225 months without further deductions from her remaining life insurance benefit.

[4] MCL 600.6303; MSA 27A.6303 provides in relevant part:

(1) In a personal injury action in which the plaintiff seeks to recover for the expense of medical care, rehabilitation services, loss of earnings, loss of earning capacity, or other economic loss, evidence to establish that the expense or loss was paid or is payable, in whole or in part, by a collateral source shall be admissible to the court in which the action was brought after a verdict for the plaintiff and before a judgment is entered on the verdict. Subject to subsection (5), if the court determines that all or part of the plaintiff's expense or loss has been paid or is payable by a collateral source, the court shall reduce that portion of the judgment which represents damages paid or payable by a collateral source by an amount equal to the sum determined pursuant to subsection (2). This reduction shall not exceed the amount of the judgment for economic loss or that portion of the verdict which represents damages paid or payable by a collateral source.

(2) The court shall determine the amount of the plaintiff's

applies to damages for past and future economic loss. According to subsection 2, before judgment is entered, the trial court must determine what expenses have been paid or will be paid by a collateral source. These collateral payments are then applied to reduce the verdict's economic damage component under the rules set forth in MCL 600.6306; MSA 27A.6306.

Plaintiff's social security benefits fall within the type of payments that should be used to reduce the verdict within the meaning of subsection 1. According to the specific language of subsection 4, "social security benefits" are a "collateral source."

Nevertheless, the trial court deemed plaintiff's social security benefits to be exceptions to the collateral source rule under subsection 5 because a possibility existed that they would be reduced or eliminated when plaintiff resumed work or when the federal government opted to reduce or end such benefits altogether. Subsection 5 provides

expense or loss which has been paid or is payable by a collateral source. Except for premiums on insurance which is required by law, that amount shall then be reduced by a sum equal to the premiums, or that portion of the premiums paid for the particular benefit by the plaintiff or the plaintiff's family or incurred by the plaintiff's employer on behalf of the plaintiff in securing the benefits received or receivable from the collateral source.

\* \* \*

(4) As used in this section, "collateral source" means benefits received or receivable from an insurance policy; benefits payable pursuant to a contract with a health care corporation, dental care corporation, or health maintenance organization; employee benefits; social security benefits; worker's compensation benefits; or medicare benefits. Collateral source does not include life insurance benefits or benefits paid by a person, partnership, association, corporation, or other legal entity entitled by law to a lien against the proceeds of a recovery by a plaintiff in a civil action for damages. . . .

(5) For purposes of this section, benefits from a collateral source shall not be considered payable or receivable unless the court makes a determination that there is a previously existing contractual or statutory obligation on the part of the collateral source to pay the benefits.

that collateral source benefits shall not be considered "payable or receivable" unless there is a previously existing contractual or statutory obligation to pay the benefits.

We find the trial court's application of subsection 5 inconsistent with its terms. In order for the collateral source rule to apply, subsection 5 only requires collateral source benefits to be based on a *"previously existing* contractual or statutory obligation" to pay. It does not require a previously existing *and perpetual* obligation to pay. At the time of the collateral source hearing, plaintiff had been certified by the Social Security Administration as disabled and was therefore entitled under 42 USC 423 to receive benefits. This is a previously existing statutory obligation.

We also reject the trial court's interpretation of the collateral source rule as applied to plaintiff's life insurance benefits. The trial court again invoked subsection 5, deeming the benefits not "payable or receivable" because plaintiff might return to work and cease receiving disability benefits. Because any disabled person might conceivably return to work, the trial court's interpretation would render the collateral source rule meaningless, particularly the provision in subsection 4 explicitly deeming insurance benefits to be a collateral source. Plaintiff's insurance benefits are fixed by a previously existing contract and are paid as compensation for economic loss. They therefore qualify as a collateral source.

However, to the extent that plaintiff's insurance benefits constitute life insurance coverage, as opposed to disability coverage, they are not a collateral source. Subsection 4 explicitly exempts life insurance benefits from the definition of "collateral source." Here, plaintiff's first round of disability payments, totaling $42,920, are a direct, dollar-for-dollar drawdown from plaintiff's life insurance

benefit.[5] Although no death has occurred, this drawdown prejudices plaintiff with respect to her life insurance and should be considered "life insurance benefits" under subsection 4. Moreover, the amount of premiums paid by plaintiff for the policy's disability insurance component should be deducted from the remaining disability benefits before reduction of the verdict. See MCL 600.6303(2); MSA 27A.6303(2).

Because of the trial court's errors with respect to the collateral source rule, we remand for recalculation in accordance with this opinion.

C

Finally, defendant argues that the trial court erred in deducting any collateral source benefits from the amount of the verdict before reducing the verdict to account for plaintiff's comparative negligence. Defendant claims that the parties stipulated otherwise. However, the application of the collateral source rule is dictated by MCL 600.6306; MSA 27A.6306, and a court is not bound by the parties' stipulation of law. *In re Finlay Estate,* 430 Mich 590, 595; 424 NW2d 272 (1988). Defendant presents no authority to the contrary. Nor does defendant argue that the trial court's understanding of MCL 600.6306; MSA 27A.6306 was erroneous.

VIII

Having resolved the issues related to the trial and judgment, we now turn to the posttrial award of mediation sanctions under MCR 2.403(O).

A

Plaintiffs first argue that MCR 2.403(O) does not

[5] See n 3, *supra.*

apply because defendant's March 5, 1991, offer to settle was an offer of judgment under MCR 2.405. Under MCR 2.405(E), where there has been both a rejection of a mediation evaluation and a rejection of an offer of judgment, the rule governing costs for the later occurring type of rejection controls except that if costs may be awarded to the same party under both rules, that party is entitled to costs from the date of the earlier rejection. Here, defendant's March 1991 offer to settle postdated the parties' rejection of the mediation evaluation in November 1990.

An offer of judgment is not the same as an offer to settle. An agreement to settle does not necessarily result in a judgment. Although it usually results in a stipulated order of dismissal with prejudice, such an order does not constitute an adjudication on the merits. It merely "signifies the final ending of a suit, not a final judgment on the controversy, but an end of that proceeding." 9A Michigan Law & Practice, Dismissal & Nonsuit, § 2, p 137. The plain language of MCR 2.405(A)(1) clearly requires an offer of judgment, not just an offer to settle.

The parties do not dispute that there was written notification of the offer to plaintiffs as an adverse party and that rejection of the offer occurred after the parties rejected the mediation evaluation. However, they do dispute whether defendant's March 1991 offer to settle constitutes an offer for purposes of MCR 2.405(A)(1). We hold that it does not. The offer, which was presented in a letter by defense counsel, contained the following key language:

My client has authorized me to extend a new settlement offer in the above-entitled case, in the amount of $500,000.00. This amount can be put

into a structure if so desired. Of course, confidentiality is a condition of the settlement.

I am sure you have made your own evaluation of the liability aspects of the case, and would probably agree that the roadway, off-road roll over and failure to use seat belts, among other things, make this a very defensible case. As a result, this offer of settlement is made in good faith and, I think, presents a more than fair resolution of the issues from your client's perspective.

While defendant expressed a willingness to settle and to bring an end to the case, it plainly did not express a willingness "to stipulate to the entry of a judgment in a sum certain." MCR 2.405(A)(1). The trial court did not err in applying MCR 2.403(O) instead of MCR 2.405.

**B**

Plaintiffs also argue that, under MCR 2.403(O) (1), they are liable only for an award of "costs," not "actual costs." Plaintiffs' argument was rejected by this Court in *Zalut v Andersen & Associates, Inc,* 186 Mich App 229; 463 NW2d 236 (1990). There, the omission of the word "actual" from the second sentence of MCR 2.403(O)(1) was deemed to be inadvertent, and the meaning of the term "costs" was deemed to be the same as "actual costs." *Zalut* at 232-234.

**C**

Plaintiffs next argue that the trial court erred in determining the amount of attorney fees awarded under MCR 2.403(O) and in failing to hold an evidentiary hearing regarding which costs were "necessitated" by plaintiffs' rejection of the mediation evaluation. The trial court's award of attorney fees is reversible only for abuse of discretion.

*Jernigan v General Motors Corp,* 180 Mich App 575, 587; 447 NW2d 822 (1989).

Defendant's original request for $962,166.20 in attorney fees was accompanied with billing statements from all four law firms hired by defendant. We agree with the trial court's decision to award less than half of that amount and find no error in its detailed analysis of the billing statements for duplicative work. Although the result was the by-product of two different methods, the analysis was reasonable and adhered closely to the information provided in the billing statements and to the court's observations of the proceedings. The trial court considered all the factors set forth in *Wood v DAIIE,* 413 Mich 573, 588; 321 NW2d 653 (1982). We find no abuse of discretion in the court's award of attorney fees.

The trial court was also justified in awarding defendant expert witness fees. See *Giannetti Bros Construction Co v Pontiac,* 175 Mich App 442, 449; 438 NW2d 313 (1989). The trial court's assessment of these fees was not an abuse of discretion. Plaintiffs have failed to convince this Court with sufficient proof that the amount of these fees was falsified or excessive or that the experts' testimony was unrelated to the research they performed and for which they billed the defendant.

Plaintiffs also assert that none of defendant's post-mediation fees were "necessitated" by plaintiffs rejection because plaintiffs offered to settle the case on several occasions before trial for the amount of the mediation evaluation. According to plaintiffs, "it was the defendant's refusal to settle this case and the defendant's rejection of the mediation evaluation which compelled the trial of this case."

Essentially, plaintiffs claim that their initial rejection of the mediation evaluation was not the

"but for" cause of the fees incurred by defendant, citing *Maple Hill Apartment Co v Stine,* 131 Mich App 371; 346 NW2d 555 (1984). However, *Maple Hill* was vacated and remanded to the Court of Appeals by the Supreme Court and has no precedential value. 422 Mich 863 (1985). On remand, the *Maple Hill* Court considered only the former Oakland County Circuit Court Rule 18.12, which did not contain the requirement that postmediation fees be "necessitated by the rejection." 147 Mich App 687, 690-692; 382 NW2d 849 (1985). Therefore, any discussion of the meaning of this requirement by the *Maple Hill* Court on remand is dicta. Since *Maple Hill,* the "but for" test has been rejected by this Court. See, e.g., *Michigan Basic Property Ins Ass'n v Hackert Furniture Distributing Co,* 194 Mich App 230, 235-236; 486 NW2d 68 (1992).

D

Plaintiffs also argue that the enforcement of mediation sanctions in this particular case is unconstitutional. Although plaintiffs mention in passing that due process was violated, the thrust of their argument is that they have been denied equal protection of the laws.[6] The test to determine whether legislation and court rules comport with due process and equal protection is essentially the same. *Shavers v Attorney General,* 402 Mich 554, 612-613; 267 NW2d 72 (1978). Where no suspect classification is involved, legislation must be sustained if it is rationally related to a legitimate government purpose. *Id.* at 613. Here, no suspect classification is involved, a legitimate government purpose exists (expediting litigation), and the court rule is rationally related to that purpose.

[6] See US Const, Am XIV; Const 1963, art 1, §§ 2, 17.

The court rule placed both plaintiffs and defendant at risk when they rejected the mediation evaluation.

E

Finally, plaintiffs argue that the trial court erred in refusing to grant their request for relief from the award of mediation sanctions. Specifically, plaintiffs claim that, when deciding whether to reject the mediation evaluation and defendant's subsequent March 5, 1991, offer to settle, they misunderstood the meaning of "costs" versus "actual costs" in MCR 2.403(O)(1) and the meaning of an offer of judgment under MCR 2.405. This misunderstanding, plaintiffs claim, constituted excusable neglect under MCR 2.612(C)(1). A trial court's decision on a motion under this rule is reviewed for abuse of discretion. *Mikedis v Perfection Heat Treating Co,* 180 Mich App 189, 203; 446 NW2d 648 (1989).

Unlike the cases in which this Court has relieved parties of the consequences of rejecting a mediation evaluation, see, e.g., *Great American Ins Co v Old Republic Ins Co,* 180 Mich App 508; 448 NW2d 493 (1989); *Muntean v Detroit,* 143 Mich App 500; 372 NW2d 348 (1985), there were no procedural errors with respect to mediation in this case. Plaintiffs clearly intended to reject both the mediation evaluation and defendant's offer to settle. Plaintiffs' error was in assessing the consequences of their choice. This type of mistake is insufficient to furnish a basis for relief under MCR 2.612(C)(1). See 3 Martin, Dean & Webster, Michigan Court Rules Practice, p 537.

In Docket No. 148831, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion. In Docket No. 151110, we affirm the order of mediation sanctions.