# STATE OF MICHIGAN

# COURT OF APPEALS

CONSTANCE SNIDER,

       Plaintiff-Appellee,

and

ADVANCED SURGERY CENTER, LLC, and
AFFILIATED DIAGNOSTICS OF OAKLAND,

       Intervening Plaintiffs,

v

GEICO INDEMNITY COMPANY,

       Defendant-Appellant.

UNPUBLISHED
October 12, 2017

No. 332699
Wayne Circuit Court
LC No. 14-002850-NF

Before: SHAPIRO, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

In this no-fault action to recover personal protection insurance (PIP) benefits, defendant, Geico Indemnity Company (Geico), appeals as of right the trial court's judgment, following a bench trial, in favor of plaintiff, Constance Snider. Because the trial court's findings of fact are not clearly erroneous, we affirm.

## I. BASIC FACTS

This case arises out of an automobile accident in which Snider, a pedestrian, was struck by an automobile and subsequently sought benefits from Geico under a no-fault insurance policy held by her daughter. At the parties' stipulation, the sole issue tried below was whether, for purposes of MCL 500.3114(1), the daughter was "domiciled" at the home of her parents, where she resided on a regular basis, or at the home of her longtime boyfriend, where she also resided on a regular basis.

At trial, Snider's daughter, who was 41 years old, testified that she lived at her parents' house along with her parents and brother. She estimated that, depending on what was happening in her life, she spent "[a] few nights a week" at her parents' house and "[m]aybe two nights, maybe three nights" at her boyfriend's house. The daughter further testified that, both at the time of the accident and at the time of trial, (1) she had her own room at her parents' house; (2) her

-1-

parents' house was where she stored most of her personal belongings, including her birth certificate, items of sentimental value, and her car; (3) she had lived at her parents' house her "whole life;" (4) besides utility bills she received her mail at her parents' house; (5) her parents' house was the address used on the insurance application with Geico; and (6) she subjectively intended her parents' house to be the place where she lived. Snider, her husband, and her son testified similarly.

The daughter admitted that about four or five years before trial, she had formally changed the address on her driver's license to her boyfriend's address. She explained that she did so to help her boyfriend, who became unemployed "[a]bout six years" before trial, had applied for social security disability, and was dependent on her. Snider's daughter testified that her boyfriend was unable to obtain utilities under his name, so she put his utilities in her name, which required her to have his address on her driver's license. She explained that after formally changing the address on her driver's license, she began to use that address generally to avoid any disparity between her license and what she was representing to others as her address. Geico presented evidence that, using her boyfriend's address, the daughter filed as "head of household" for tax purposes and that her school records, employment forms and records, and her resume all used her boyfriend's address. There was also testimony that the daughter voted at the precinct associated with her boyfriend's address, registered her car using her boyfriend's address, kept both casual and work clothes at her boyfriend's house, and sometimes stayed at his place for at least half a week at a time.

After the one-day bench trial, the trial court credited the testimony from Snider's witnesses and found that Snider was domiciled with her daughter at the time of the accident. Accordingly, the court entered a judgment in Snider's favor.

## II. DOMICILE

### A. STANDARD OF REVIEW

Geico argues that the trial court erred by finding that Snider was domiciled with her daughter. A trial court's factual findings in a bench trial are reviewed for clear error, and its conclusions of law are reviewed de novo. *Scholma v Ottawa Co Rd Comm*, 303 Mich App 12, 16; 840 NW2d 186 (2013). "A domicile determination is generally a question of fact; however, where the underlying material facts are not in dispute, the determination of domicile is a question of law for the circuit court" that is reviewed de novo. *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 489-490; 835 NW2d 363 (2013). Because the underlying material facts were disputed, the determination of domicile was a question of fact. A court's finding of fact "is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Bennett Estate*, 255 Mich App 545, 549; 662 NW2d 772 (2003). Due regard must be given to the trial court's special opportunity to judge the credibility of the witnesses. MCR 2.613(C).

### B. ANALYSIS

MCL 500.3114(1) provides that "a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's

spouse, and a relative of either *domiciled in the same household*, if the injury arises from a motor vehicle accident . . . ." (Emphasis added). Here, it is undisputed that Snider's daughter has a no-fault policy with Geico and that Snider is her daughter's "relative." Therefore, the only question is whether Snider is domiciled in the same household as her daughter. If she is, she is entitled to benefits under MCL 500.3114(1). If she is not, then she is not entitled to benefits under MCL 500.3114(1).

The term "domiciled" is not defined in the no-fault act. *Grange*, 494 Mich at 492. Our Supreme Court, therefore, has afforded the term its common-law meaning. *Id*. at 493. In order to determine where an individual is domiciled, a reviewing court must apply a "flexible multi-factor test . . . in which no one factor is determinative." *Id*. at 497. In *Workman v Detroit Auto Inter-Ins Exch*, 404 Mich 477, 496-497; 274 NW2d 373 (1979), our Supreme Court set forth four factors that generally should be considered:

> (1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; [and] (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household. [Citations omitted.]

Further, the following factors are also relevant "for determining no-fault domicile, with a particular focus on adult children:"

> [1] whether the claimant continues to use his parents' home as his mailing address, [2] whether he maintains some possessions with his parents, [3] whether he uses his parents' address on his driver's license or other documents, [4] whether a room is maintained for the claimant at the parents' home, and [5] whether the claimant is dependent upon the parents for support. [*Grange*, 494 Mich at 497 n 41 (alterations in original), quoting *Dairyland Ins Co v Auto Owners Ins Co*, 123 Mich App 675, 681-682; 333 NW2d 322 (1983).]

Here, the court applied the *Workman* factors. The first *Workman* factor required the trial court to consider the daughter's subjective intent or remain domiciled in her parents' household, see *Workman*, 404 Mich at 496, and the court found that the daughter's subjective or declared intent was to be domiciled at her parents' house. This finding was not clearly erroneous. The testimonies of Snider's witnesses repeatedly and consistently reiterated that the daughter intended her parents' house to be her permanent residence or domicile. On appeal, Geico challenges the finding, noting that the daughter's "intent" was expressed in other places—sometimes under the penalty of perjury—and that in those places she indicated that she was

-3-

residing at her boyfriend's house.[1]  Geico correctly notes that these objective statements of the daughter's intent served to impeach her trial testimony that she subjectively intended to be domiciled at her parents' house.  However, the trial court, sitting as the trier of fact, was free to credit or discredit the testimony that the daughter intended her domicile to be with her parents.  See *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 512; 892 NW2d 467 (2016) (stating that "[i]t is for the trier of fact to assess credibility," and it "may choose to credit or discredit any testimony").  Given the court's conclusion that it found the daughter's testimony credible, it clearly did not discredit her testimony on the basis of the impeachment evidence.  And given that we must defer to the court's credibility determinations, MCR 2.613(C), we conclude that the trial court's findings on this factor were not clearly erroneous.  This factor, therefore, favors finding that the daughter was domiciled with Snider.

The second *Workman* factor considers the formality of the relationship between the daughter and the other members of the household.  *Workman*, 404 Mich at 496.  The court found that the daughter had a close relationship with her family, the other members of her parents' household.  The trial testimony supports that finding.  However, the record also supports a finding that the daughter had a close, formal relationship with her long-time boyfriend.  The testimony established that he was dependent on her, she resided part-time at his house, and she had been dating him for a significant length of time.  Nevertheless, there was also testimony that, although she had been dating him for about 16 years, her parents had only met him on a few occasions and her parents and brother had either never or very rarely been in her boyfriend's house.  She also testified that she had no plans to marry the boyfriend.  On the whole, the trial court may have erred by weighing this factor in favor of finding that the daughter was domiciled with Snider.  However, contrary to Geico's assertions on appeal, this factor does not favor a finding that the daughter was domiciled with either her parents or her boyfriend.  Rather, this factor is neutral.

The third *Workman* factor is not applicable under the facts of this case.

The fourth *Workman* factor considers the "existence of another place of lodging by the person alleging "residence" or "domicile" in the household."  *Workman*, 404 Mich at 497.  When considering this factor, the trial court acknowledged that the daughter was residing in two households: her parents' house and her boyfriend's house.  In particular, the court found that she astayed regularly at her boyfriend's house, but that she also maintained a bedroom and slept regularly at her parents' house.  On appeal, Geico contends that this factor should weigh "decisively" in its favor.  However, while the fact that the daughter resided at two places is relevant, on the whole, the testimony did not suggest that she was at one place more than the other.  Further, the court appears to have considered this factor to weigh equally in favor of finding that the daughter was either domiciled at her boyfriend's house or at her parents' house.  Given the testimony, that finding is not clearly erroneous.

---

[1] Specifically, the daughter listed her address as being at her boyfriend's house on her driver's license, tax forms, employment records, utility bills, employment applications, school records, voter's registration, and vehicle registration.

Moving to the *Dairyland* factors set forth in *Grange*, the first factor—the mailing address of the adult child—favors both parties. See *Grange*, 494 Mich at 497 n 41.[2] The trial testimony was that the daughter received mail at her parents' house, including junk mail and her student loan mail. Further, by virtue of having her boyfriend's utilities in her name, she also, necessarily, received mail at her boyfriend's address. Because she received mail in both places, this factor favors both parties equally.

The second *Dairyland* factor considers whether the adult child "maintains some possession" with her parents. *Id*. Here, the trial testimony was that she kept some work and casual clothes at her boyfriend's house, but that all her other possessions, including knickknacks, keepsakes, and important documents, were kept at her parents' house. Therefore, this factor favors both parties equally.

The third *Dairyland* factor considers whether an adult child used her parents' address on her driver's license or other documents. *Id*. Geico correctly points out that this factor favors its position because, save for the insurance policy, all of the daughter's documents—including her driver's license—used her boyfriend's address. However, contrary to Geico's assertions, the trial court was not required to find that this resolved the issue of domicile "nearly conclusively" against Snider's claim. As our Supreme Court has pointed out, no one factor is conclusive and all relevant factors must be considered. *Id*. at 497. Further, the trial court was free to credit the daughter's testimony that the reason her documents showed her boyfriend's address was because she had to change the address on her driver's license in order to obtain utilities for him at his house. See *Bank of America, NA*, 316 Mich App at 512. And, again, the trial court found the daughter's testimony credible, and we must defer to that finding on appeal. MCR 2.613(C). Therefore, although this factor favors Geico, in light of the court's findings of fact, this factor does not resolve the issue nearly conclusively against Snider.

The fourth *Dairyland* factor considers whether a bedroom is maintained for the adult child in the parents' home. *Grange*, 494 Mich at 497 n 41. Here, the testimony reflects, and the trial court found, that the daughter had a bedroom, which she used, in her parents' home. There was no testimony that she had her own bedroom at the boyfriend's home, but the record reflects that, while there, she shared a bedroom with her boyfriend. This factor, therefore, does not favor either party.

The fifth *Dairyland* factor also does not favor either party. It considers whether the adult child is dependent upon the members of her parents' household for support or assistance. *Id*. Here, the daughter and her parents testified that the daughter works and is not dependent upon her parents. However, there was also testimony that her father paid her auto insurance premiums, purchased the vehicle she drove, and expected to pay for her student loans in the future.

---

[2] The trial court did not expressly consider the *Dairyland* factors. Nevertheless, the court's factual findings are relevant to the *Dairyland* factors, so we will consider them on appeal.

In sum, the majority of the *Workman* and *Dairyland* factors do not favor either party. And, the factors that favor one party over another were considered by the trial court. The court found that the factor that most favored Geico—i.e., the fact that the daughter's documents almost uniformly represented her address as her boyfriend's address—was outweighed by the factor that most favored Snider—i.e., the fact that the daughter's subjective intent was to be domiciled with her parents. No doubt relevant to the court's findings was the fact that the testimonies presented by Snider were fairly consistent in expressing both the daughter's intent and the reason that the daughter's documents almost all used the boyfriend's address. We recognize that a different court may not have credited the daughter's testimony that almost all of her documents used her boyfriend's address because she needed to put his utilities in her name to help him out. However, we are constrained by the trial court's finding that her explanation was credible, MCR 2.613(C), and we are not at liberty to simply set aside a trial court's factual findings just because, in our view, the facts merited a different finding. It is a long-standing legal principle that a reviewing court is not free to reweigh the evidence and set aside a verdict merely because the factfinder "could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Tennant v Peoria & PU RR Co*, 321 US 29, 35; 64 S Ct 409; 88 L Ed 520 (1944). Giving the trial court's factual findings proper deference, we conclude that the court did not err by finding that Snider was domiciled with her daughter.

## III. MISTRIAL

### A. STANDARD OF REVIEW

Geico also argues that the trial court abused its discretion by denying Geico's motion for a mistrial. Geico's motion was premised on the fact that the trial court—mistakenly believing that Geico had decided to present no witnesses—began to announce a ruling before Geico had presented its case. "Generally, an issue is not properly preserved if it is not raised before, and addressed and decided by, the trial court." *Hines v Volkswagen of American, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). To be effective for preservation purposes a motion for a mistrial must be timely. *Haberkorn v Chrysler Corp*, 210 Mich App 354, 363; 533 NW2d 373 (1995). Geico raised this issue in the trial court by moving for a mistrial, but it did not do so at the time the purported error occurred. Because Geico's motion for a mistrial was untimely, this issue is unpreserved. "Unpreserved claims are reviewed for plain error, which occurs at the trial court level if (1) an error occurred (2) that was clear or obvious and (3) prejudiced the party, meaning it affected the outcome of the lower court proceedings." *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015) (citation and quotation marks omitted).

### B. ANALYSIS

Here, after starting to make its ruling before Geico presented its evidence, the trial court apologized, stated that it would view the evidence impartially, and that it would not "change" its ruling if the evidence so warranted a change. Thereafter, the trial court asked questions of Geico's witness and then, rather than making a ruling from the bench, issued a written opinion setting forth its findings. Although Geico contends that the trial court shifted the burden of proof by stating that it would change its mind if necessary, the court's statement, in context, was really an assurance that it would remain impartial. Further, Geico has pointed to no statements or evidence, nor have we discovered any suggesting that, in fact, the court was biased in Snider's

favor because it started to make a ruling before Geico presented its case. Therefore, although the court erred by starting its ruling early, the error was not outcome determinative, nor did it warrant a mistrial.

Affirmed. Snider, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly